Pendergast v. Yandes, Receiver.

Filed May 29, 1890.

No. 15,602.

## PENDERGAST v. YANDES, RECEIVER.

CORPORATION. — *Preferred Claim for Wages.* — *Statute.* — *Laborer Within Meaning of.* — The plaintiff was employed by the Broad Ripple Natural Gas Company to superintend the construction of its pipe lines. As superintendent he had full supervision of the digging of gas trenches, the laying of gas pipes, etc., with full authority to hire and discharge employees. The superintendency of the employees required considerable walking along the pipe lines, also, the testing of the wells made necessary the handling of wrenches and other tools for short periods of time, but aside from this he did no other physical or manual labor than was incident to his superintendency of the employees engaged in such work, and such as he at times did voluntarily. The company became insolvent, and a receiver was appointed.

*Held*, that the plaintiff was a laborer, within the meaning of the statute (Elliott's Supp., section 1605), and was entitled to have his claim for wages declared a preferred claim, to be paid before a distribution of the assets among the general creditors.

From the Marion Superior Court.

*J. L. McMaster* and *A. Boice,* for appellant.

*J. S. Duncan* and *C. W. Smith,* for appellee.

COFFEY, J.—The appellee was duly appointed and qualified as receiver of the Broad Ripple Natural Gas Company, a corporation organized for the purpose of supplying consumers with natural gas.

After his appointment the appellant filed the claim now in dispute, and sought to have the same allowed and paid as a preferred claim. The cause was tried by the court, which made a special finding of the facts in the cause and stated its conclusions of law thereon.

It appears from this special finding that the Broad Ripple Natural Gas Company is a corporation organized under the laws of this State for the purpose of supplying to consumers natural gas.

On the 19th day of March, 1888, it employed the appellant as superintendent, for the purpose of superintending the construction of its pipe lines in the city of Indianapolis and Marion county, and he continued to be so employed for one year. As such superintendent he had full supervision of the digging of gas trenches, the laying of the gas pipes, the testing of gas wells, and connecting them with the pipe lines, with authority to hire as many employees as he chose, and to discharge them at his pleasure, and had full control over said employees, who at times numbered from one hundred and fifty to two hundred. He was himself responsible directly to the company, and had no immediate superior officer except the president and vice-president. His duty was almost wholly confined to superintending the employees under his control, and in the discharge of which duty he was required to do a great deal of walking along the pipe lines, and when testing gas wells it was necessary for him to handle wrenches and other tools for a few minutes; but beyond this the discharge of his duties did not make it necessary for him to do any physical or manual labor other than such as is ordinarily incident to the superintendency of the employees engaged in such work, although he did occasionally, of his own volition, when work was pressing and there

was scarcity of hands, do some physical labor in the handling of gas pipes, and other work incident to the laying and fitting of them.

His salary or compensation was one hundred dollars per month.

His duties kept him constantly with the men who were engaged in the manual labor of laying the pipes and doing the other work herein specified, to see that such work was done properly and with proper mechanical skill; and as these men were often separated into different gangs, it was necessary for him to travel back and forth from one gang to another.

There is nothing in the articles of association or by-laws of said company specifying such an officer as that of superintendent.

The receiver was appointed on the 18th day of April, 1889. The company is insolvent, and its assets are not sufficient to pay the claims against it in full.

There is now due the appellant for services performed by him as such superintendent the sum of fifty dollars, all of which accrued within sixty days prior to the appointment of the receiver.

Upon these facts the court rendered a judgment in favor of the appellant for the sum of fifty dollars, but refused to declare it a preferred claim.

Section 1605, Elliott's Supp., is as follows: " Hereafter, when the property of any company, corporation, firm or person, engaged in any manufacturing, mechanical, agricultural or other business or employment, or in the construction of any work or building, shall be seized upon any mesne or final process of any court of this State, or where their business shall be suspended by the action of creditors or put into the hands of any assignee, receiver or trustee, then in all such cases the debts owing to laborers or employees, which have accrued by reason of their labor or

Pendergast *v.* Yandes, Receiver.

employment to an amount not exceeding fifty dollars to each employee, for work and labor performed within six months next preceding the seizure of such property, shall be considered and treated as preferred debts and such laborers or employees shall be preferred creditors and shall be first paid in full, and if there be not sufficient to pay them in full, then the same shall be paid to them *pro rata,* after paying costs."

The sole question presented for our consideration and decision is the one involving the construction of this statute. It is contended by the appellant that his claim falls within the letter as well as the spirit of the statute, while on the other hand it is contended by the appellee that the statute was intended to cover and secure such employees only as perform physical or manual labor.

The argument of the appellee is that the word " or " is used as a disjunctive conjunction, and the words between which it stands being simply used as synonymous and both expressing the same idea, the word " employee " is altogether synonymous with the word "laborer." It is contended on the other hand by the appellant that the words " laborer " and " employee " are not used in this statute as synonymous terms, but that the word " employee " was intended to have and should receive a much broader interpretation than the word " laborer."

In view of the conclusion we have reached in this case, we deem it unnecessary to inquire whether the words " laborer " and " employee," as used in this statute, are to be regarded as synonymous or otherwise, as in our opinion, under the facts found by the court, the appellant was a laborer within the meaning of the statute.

In the case of *Conlee Lumber Co.* v. *Ripon Lumber, etc., Co.,* 66 Wis. 481, it was held, however, that the words " laborer " and " employee," as used in a statute similar to the one now under consideration, were not synonymous.

There is much confusion and some apparent conflict in

the authorities upon the subject now under consideration. As to how this confusion and conflict arose it would, perhaps, be unprofitable to inquire in this case, as the authorities all agree that statutes of this kind are to be liberally construed.

In the case of *Capron* v. *Strout*, 11 Nev. 304, Stewart was employed as foreman of a mine at eight dollars per day, payable monthly. His duties were to act as general foreman, to "boss" the men who were at work in the mine, keep their time, and give them orders for their pay at the end of each month. He sought to enforce his claim for wages as a lien against the mining property. In answer to the argument that he was not a laborer within the meaning of the law, the court said : "It is said that he performed no work or labor in or upon the mine, and it is argued that the intention of the law was to secure those only who performed labor upon the mine with their hands; that to give it a wider construction, one that will make it include the wages of a foreman like Stewart, will make it cover the case of general superintendent and other officers of a corporation, and thereby impair the remedy of those who are the special objects of the legislative care. We do not admit that no distinction could be made in this respect between a foreman of miners and the superintendent of a company, but whether there could or not, we have no doubt that respondent's claim comes within the spirit as well as the letter of the law. According to the findings he certainly did work in the mine, though not with his hands, and it is clear that the direct tendency of his work was to develop the property. We think the foreman of work in the mine is as fully secured by the law as the miners who work under his direction."

In the case of *Stryker* v. *Cassidy*, 76 N. Y. 50, the claimant was an architect. He sought to enforce a statutory lien for his labor as such architect, and the court, in commenting upon his right to such lien, said : "The architect who superintends the construction of a building performs labor as

truly as the carpenter who frames it, or the mason who lays the walls, and labor of a most important character. It is not any the less labor within the general meaning of the word, that it is done by a person who is fitted by special training and skill for its performance. The language quoted makes no distinction between skilled and unskilled labor, or between mere manual labor and the labor of one who supervises, directs, and applies the labor of others."

The case of *Mining Co.* v. *Cullins*, 104 U. S. 176, is strongly in point here.

In that case the claimant was employed for an indefinite time to direct the work in the mine, with authority to employ and discharge miners, and procure and purchase supplies for working the mine. It was his duty to oversee and direct the work in said mine, direct the shipping of ore, and generally to control and direct the actual working and development of the mine. Under a statute giving a lien for work and labor, he sought to enforce a lien for his wages. The court, in answer to the claim that he was not a laborer within the meaning of the statute, said : " Statutes giving liens to laborers and mechanics for their work and labor are to be liberally construed. The finding of the district court makes clear the character of the services rendered by the defendant in error. He was not the general agent of the mining business of the plaintiff in error. * * * He was not a contractor. His services were not of a professional character, such as those of a mining engineer. He was the overseer and foreman of the body of miners who performed the manual labor upon the mine. He planned and personally superintended and directed the work, with a view to develop the mine and make it a successful venture. * * * Such duties are very different from those which belong to the general superintendent of a railroad, or the contractor for erecting a house. Their performance may well be called work and labor ; they require the personal attention and supervision of the foreman, and occasionally in an

emergency, or for an example, it becomes necessary for him to assist with his own hands. They can not be performed without much physical exertion, which, while not so severe as that demanded of the workman under his control is nevertheless as really work and labor. Bodily toil, as well as some skill and knowledge in directing the work, is required for their successful performance. We think that the discharge of them may well be called work and labor, and that the district court rightfully declared the person who performed them entitled to a lien under the law of the Territory." See, also, *Mulligan* v. *Mulligan,* 18 La. Ann. 20; *Knight* v. *Norris,* 13 Minn. 473; *Caraker* v. *Mathews,* 25 Ga. 571; *Gurney* v. *Atlantic, etc., R. W. Co.,* 58 N. Y. 358; *Bass* v. *Doerman,* 112 Ind. 390.

In the case last cited it was held by this court that the statute now under consideration should receive a liberal construction.

While the appellant in this case was called superintendent, it is shown that he was not an officer of the company, nor was he general manager or a general agent. His principal duties were to superintend the construction of trenches and the laying of gas pipes. Within the authorities above cited, he was to all intents and purposes a laborer. Under the liberal construction to be given to the statute before us he was a laborer within that term as used in the statute, and his claim for wages should be declared a preferred claim, and paid before a distribution of the assets among the general creditors.

It follows that the Marion Superior Court erred in refusing to declare the claim in controversy preferred, for which reason the judgment must be reversed in so far as it adjudges said claim to be paid as a general debt.

The judgment of the Marion Superior Court, in so far as it adjudges the claim in suit to be a general debt, to be paid out of the assets in the hands of the receiver, is reversed,

with directions to enter the proper order declaring the same a preferred claim.

. Filed May 29, 1890.