# MEYER LUMBER COMPANY v. TRYGSTAD.

## (134 N. W. 714.)

**Mechanics' liens — single lien against separate buildings on separate lots.**
Evidence examined and shows that the defendants' Frank and Tompkins were the owners of adjoining lots in the city of Minot, North Dakota; that in August, 1907, F. decided to build a three-story brick building upon his lot, and advertised for bids and let the contract for the same. Sometime thereafter T. decided to build upon his lot, and consulted the contractor and architect employed by F., and entered into a contract with the contractor to build a three-story building upon his lot; such building, however, to be only one-third the size of F.'s building in other respects. The contractor bought the material for both buildings from plaintiff, but there is evidence of separate estimates so that plaintiff could have kept separate bills. Plaintiff gave a notice by registered letter, as required by § 6237, Rev. Codes 1905, to each lot owner, to the effect that his building and lot would be held for the material therein used. Later plaintiff filed a joint lien against both lots and buildings. *Held* that the contracts were separate and distinct, and that the joint lien filed against both premises is void.

Opinion filed January 30, 1912.

Appeal from District Court, Ward county; *Burr*, J.

Action by the Meyer Lumber Company against Peter Trygstad and others. From a judgment for defendants, plaintiff appeals.

Affirmed.

*Thompson & Schull* and *Engerud, Holt, & Frame,* for appellant.

Note.—While in most states a single lien on several separate buildings is allowed where the buildings are erected under a single contract, the decision in MEYER LUMBER Co. v. TRYGSTAD, that a single lien cannot be filed against separate buildings erected under separate contracts, seems to be in harmony with the other authorities which have considered this question, as shown by the cases collected in a note in 17 L.R.A. 314.

The question as to when separate structures and their appurtenances intended for a united use will be treated as a unit in relation to liens is considered in a note in 65 Am. St. Rep. 168.

And the right to a joint lien where a single building covers adjoining lots held in severalty is the subject of a note in 30 L.R.A. (N.S.) 1219.

As to extent of land to which a mechanics' lien will attach, see note in 26 L.R.A. (N.S.) 831.

*D. C. Greenleaf, E. R. Sinkler,* and *Johnson & Nestos,* for respondents.

BURKE, J. Plaintiff is a subcontractor who furnished material for the buildings hereinafter mentioned. Trygstad is the contractor, and the defendants Frank and Tompkins were the several owners of the lots and the buildings thereon erected,—Frank owning lots 13 and 14, and Tompkins owning lot 15 adjoining.

The testimony is very long,—the printed abstract containing 1,120 pages, not counting the index,—and prompts us to remind attorneys that the "law's delays" are not always chargeable to the courts. For instance, we might also suggest that such matters as newspaper interviews with business men, if material, should be proven by the testimony, under oath, of the person making the interview, rather than by the introduction of photographs of the newspaper containing the resulting write-up. If this court is to keep up its work and mete out the prompt justice to which the people of this state are entitled, the attorneys must practice more self-restraint while trying cases under the Newman act. As we said, the testimony is long; but from a careful reading thereof we think the following stated facts are rather conclusively established: The defendants Frank and Tompkins had owned their lots for some time and had probably often talked of building thereon and of using a party wall for both buildings. During the summer of 1907 Tompkins was in California when Franks obtained a long-term lease with the government for the Minot Postoffice and immediately decided to build. To this end he advertised for bids for a three-story brick building 50 by 140 feet in size, and including a party wall half upon his lots and half upon Tompkins lot. The bids were to be opened August 24, 1907. Upon the tenth of said month Tompkins returned from California, but had not decided to build; however, he told Frank that he would pay for half of the party wall, and for Frank to go ahead. This Frank did, letting the contract August 27, 1907, to Trygstad for the building, including the party wall. This building, when completed, would have stood a complete structure all upon Frank's lot excepting half of the party wall. It did not need the Tompkins building to support or adorn it. The price Frank was to pay for his building was determined, and plaintiff had furnished an estimate to Trygstad for this single structure,.

showing that they might have filed a separate lien against this building, so far as a separation of accounts was concerned.

Some time between the 27th of August and September 10, 1907, Tompkins decided to erect a building upon his lot, and entered into negotiations with the same contractor and architect who had already been employed by Frank, for the erection of a three-story brick building 25 by 70 feet, using the party wall for one wall of his building. Both Frank and Tompkins testify they had nothing to do with each other during these negotiations, excepting to make a party-wall agreement. The architect suggested that the front of the building should be made uniform so as to present the appearance from the front of being one building, and that the stairway leading to the second floor be placed in the party wall between the two buildings. These changes were agreed to by the owners, and a large stone name plate was placed over each building containing the name of the owner. Excepting for the stairway just mentioned, there was no break in the party wall, and the two buildings were as much separated as any two buildings could be using a party wall. The roof was securely joined at the same height to prevent leakage, and the front wall was of uniform height, with a simple cornice running along the entire 75 feet. The Frank Building is some 40 feet deeper than the Tompkins Building. Tompkins let his contract for his building some time in September, for a building 70 feet deep, but changed it again later, and a new contract was made for a building 100 feet deep, the Frank Building being some 40 feet deeper. Having both contracts, Trygstad began work first upon the Frank Building, but shortly thereafter upon the Tompkins Building, and seems to have worked at both buildings at the same time. However his builder, Bergrum, testified that they had two separate plans and specifications for each building, and that he thought the building material had been furnished for the Frank Building all at one time on one contract. Probably the building material was commingled by the workers, owing to the proximity of the two jobs. This was done, however, through no fault of Frank or Tompkins. There is also, incidently, evidence that the contractor built other buildings with the lumber bought of plaintiff at this time, which might have a strong bearing upon the validity of the lien, were we to reach the question. The above is a brief résumé of the facts which we think are supported by the overwhelming weight of

the evidence, and we agree with the trial court in its conclusion that there were two buildings erected under two distinct contracts. In fact the plaintiff seems to have taken this view of the matter at the time of serving his notice by registered letter upon these defendants, as he sent separate notices to each, notifying Frank that he would be held for the material used in the erection of the building upon lots 13 and 14, and informing Tompkins that he would be likewise held for the material used in the building upon lot 15. When the time came to file the lien, however, plaintiff changed his mind and filed one lien against both buildings and against both lots, evidently construing § 6238 as authority for so doing; said section of the Revised Codes 1905 reading, "If labor is done or materials furnished under a single contract for several buildings . . . the person furnishing the same shall be entitled to a lien therefor as follows: . . . if such buildings . . . are upon separate . . . lots upon all such buildings . . . and the . . . lots upon which the same are situated, but upon the foreclosure of such lien the court may . . . apportion the amount of the claim among the several . . . lots in proportion to the enhanced value of the same . . . if . . . necessary to protect the rights of third persons." Section 6237 of the same chapter provided: "No person who furnishes any materials . . . for a contractor . . . shall be entitled to file such lien unless he notify the owner of the land by registered letter previous to the completion of said contract, that he has furnished such materials."

The first-quoted section was evidently enacted to protect the subcontractor in those cases where two or more owners of buildings, or one owner of two or more buildings, united the contract under which the building was done, so as to form one joint venture and thereby prevent the subcontractor from obtaining a lien upon each building separately. The theory being that the owners had so joined their contracts that it was almost, if not quite, impossible to trace the materials into the separate buildings. It is founded upon the plainest principles of equity. If, however, the lienor can conveniently trace his materials or labor into one of several buildings, and thus perfect a lien thereon, it seems equally equitable that he should be limited to a lien thereon, and that the owner of the adjacent building should not be subjected to the burden of another's debt. Our § 6238 proceeds upon the assumption

22 N. D.—36.

that where the contract is single the subcontractor has the right to furnish materials without making an effort to trace them into the separate buildings. Plaintiff relies upon the case of Stoltze v. Hurd, 20 N. D. 412, 30 L.R.A.(N.S.) 1219, 128 N. W. 115, Ann. Cas. 1912, C. 871, which holds that where two adjoining landowners make a joint contract for the erection of a building thereon, and a subcontractor furnishes material to be used in such building, he is entitled to a lien upon the entire premises, but not to a separate lien against one lot and the part of the building standing thereon. It being the contention of plaintiff that, if the subcontractor cannot have a lien upon one lot, it necessarily follows that he must have a lien upon both lots. The case of Stoltze v. Hurd, supra, must be read with care, or it will mislead. See valuable note thereto in the L.R.A. supra. The real reason for denying the subcontractor the single lien in cases like Stoltze v. Hurd is the fact that the joint contract makes it a physical impossibility to obtain single liens, and the joint lien is given, by the statute, in its stead.

In the case at bar the contracts were separate and distinct. The lumber company furnished separate and distinct estimates for the jobs. There does not appear any reason why separate liens might not have been filed. Why, then, ought Frank to be burdened with the lien upon Tompkins' building and Tompkins burdened with Frank's lien? As the lien is purely a statutory right, the failure to comply with the statute avoids the lien. As the plaintiff has not filed the liens to which he was entitled, and has filed a purported lien to which he was not entitled, he is without remedy. We might also say that even were the contract a single one, as claimed by plaintiff, his lien must fall because of the fact of no sufficient notice by registered letter as required by § 6237. The notices given are to the effect that each will be held for the material used in his building upon his separate lot. This will not supply the necessity for notice to both of the owners, that both of the lots and buildings will be held for the entire debt.

From what we have said it follows that plaintiff has no lien, and the judgment of the trial court is affirmed.

Mr. Justice Goss, being disqualified, did not participate.