## ROBERTSON LUMBER COMPANY v. CLARKE.

### (138 N. W. 984.)

**Mechanics' lien — to what property attaches.**

1. Sections 6237 and 6238, Rev. Codes 1905, authorizing the filing of a mechanics' lien for labor and materials furnished "for the construction or repair of any work of internal improvement, or for the erecting, alteration, or repair of any buildings or other structures upon land," etc., construed and held to authorize the filing of such lien against two or more buildings and the land upon which they stand, where such labor or material is fur-

Note.—On the right to file a single mechanics' lien against several buildings, see notes in 17 L.R.A. 314 and 65 Am. St. Rep. 165.  And as to the extent of land to which mechanics' liens will attach, see note in 26 L.R.A.(N.S.) 831. And the authorities upon the right to a mechanics' lien where building covers adjoining lots held in severalty are reviewed in a note in 30 L.R.A.(N.S.) 1219.

For a discussion of the authorities on the priority of statutory preference of claim for labor over pre-existing mortgage, see notes in 2 L.R.A.(N.S.) 615 and 25 L. ed. U. S. 1057, and earlier note in 14 L.R.A. 306.

nished under an entire contract. Chapter 158, Laws of 1909, which amends § 6237, Rev. Codes 1905, does not change the former law in this respect.

**Mechanics' lien — finding as to entirety of contract.**

2. The finding of the trial court that the material for the two dwellings was furnished by plaintiff under an entire contract is sustained.

**Mechanics' lien — to what property attaches — entirety of contract.**

3. Appellant's contention to the effect that under the statute a mechanics' lien statement can be filed only against the building and the particular lot upon which the same is situated, is held without merit. The two dwellings having been constructed from material furnished under a single contract, it was permissible to file a lien statement against both buildings and the four contiguous lots, upon which they are situated.

**Mechanics' lien — itemized statement of materials.**

4. Chapter 158, Laws 1909, requiring a separate itemized account to be kept of materials furnished, should be given a reasonable interpretation, and where a separate itemized account is, in good faith, kept, but through an unintentional mistake or clerical error an item of minor importance is included therein which belongs to another account, such fact will not operate to deprive the materialman of the right to a lien.

**Mechanics' lien — affidavit of verification.**

5. Where the lien statement is duly signed by the materialman, but he omits to sign the affidavit of verification, such omission is not fatal to the lien where it appears that he, in fact, made oath to the truth of the facts stated in such affidavit. In other words, it is not a necessary essential to the validity of such an affidavit that the affiant should subscribe his name thereto, although this is the usual and better practice.

**Mechanics' lien — statement.**

6. To entitle a materialman to a lien, he must comply with § 6240, Rev. Codes 1905, which requires him to file with the clerk of the district court "a just and true account of the demand due him after allowing all credits," etc. Appellant's contention that this statutory requirement was not complied with by plaintiff is held without merit. Except as to the item of $10.83, which was included in the account through a clerical error, such account is held to correctly state the various items of debits and credits, and the fact that, in striking a balance by subtracting the total credits from the total debits, a mistake of $100 was made, does not operate to defeat the lien.

**Mechanics' lien — priority as to mortgage.**

7. Appellant's contention that the mortgages held by him represented the purchase price of the lots, and that they are therefore entitled to priority over plaintiff's mechanics' lien, is held untenable, there being no proof in support of such contention.

**Deposition — opportunity to cross-examine witness.**

8. Appellant moved in the court below to suppress the deposition of a witness for plaintiff upon the ground that sufficient time was not afforded him in which to appear and cross-examine such witness. The taking of the deposition was noticed for October 14, 1911, at Pontiac, Michigan, and service of the notice was made at Grand Forks on October 10th. No claim is made that appellant was, in fact, prevented from appearing or being represented at the taking of the deposition, and, furthermore, we think sufficient time for this purpose was afforded him, and the ruling of the trial court in refusing to suppress the deposition is therefore sustained.

**Appeal — trial de novo — affirmance.**

9. Upon a trial *de novo* of the entire case, we reach the conclusion that the decision of the court trial was, in all things, correct, and its judgment is accordingly affirmed.

Opinion filed December 10, 1912.

Appeal by defendant, Sidney Clarke, from a judgment of the District Court for Grand Forks County, *Charles F. Templeton,* J., in plaintiff's favor foreclosing a mechanics' lien.

Affirmed.

*H. A. Bronson,* for appellant.

*Scott Rex,* for respondent.

Fisk, J.   This action originated in the district court of Grand Forks county, and was brought for the purpose of foreclosing a mechanics' lien on lots 5, 6, 7, and 8 of block 18, Budge and Eshelman's 3d addition to the city of Grand Forks. The material, for the purchase price of which the lien is claimed, was sold and delivered by plaintiff to the defendant Niles Swenson, for the construction of two dwellings on said lots, one on lots 5 and 6, and the other on lots 7 and 8. Several other parties, including the appellant, Clarke, were joined with Swenson as defendants, but the appellant, Clarke, is the only defendant who made any appearance in the action. He is the assignee of two certain mortgages of $200 each, covering the property in question, executed and delivered by Swenson, and he asserts the superiority of the liens thus held by him over plaintiff's mechanics' lien. He also attacks the validity of plaintiff's alleged lien on several grounds which will be hereafter noticed, and also contends that certain payments have

been made on the plaintiff's claim which have not been credited. These, in brief, are the issues involved. Plaintiff had judgment in the court below from which this appeal is prosecuted, and the appellant has specified that he desires a review of the entire case in this court.

In his printed brief and argument appellant's counsel argues his various contentions under ten separate points, and we will consider and decide such points in the order presented.

Under point 1 appellant contends that, even conceding that the sale by plaintiff to Swenson of the material for the two dwellings was made under an entire contract, still under our mechanics' lien statute plaintiff was not authorized to file a joint lien statement against both buildings and the several lots described. This contention is based on the phraseology of chapter 158, Laws of 1909, which amended § 6237, Rev. Codes 1905. As thus amended, this section gives a lien to each person who shall perform labor or furnish materials for the erection, alteration, or repair of "any building or other structure." Prior to such amendment the words corresponding to those quoted were "any buildings or other structures." By such amendment the following provision was also added: "Provided, no person furnishing material . . . for any of the purposes aforesaid shall be entitled to a lien . . . unless he shall keep an itemized account thereof, separate and apart from all other items of account against the purchaser." Said statute was also amended in other particulars not material to this controversy. It is argued that, because the singular number is substituted for the plural form in referring to the edifice to be built, when taken in connection with the requirement that the materialman must keep an itemized account thereof, separate and apart from all other items of account against the purchaser, a legislative intent is manifested of limiting a mechanics' lien to one dwelling or structure only. We are unable to view the matter in this light, and we think it clear that there was no legislative purpose to effect any change in the former statute in this respect; for, if so, the legislature would most certainly have also changed § 6238 from the plural to the singular number in referring to the edifices or structures upon which liens might be claimed. The plural form is still retained in the latter section. It is manifest that the only change contemplated by such amendment was to impose on lien claimants the necessity of keeping a separate itemized account of

materials furnished from all other accounts against the purchaser and against the contractor or subcontractor, and also amending the statute with reference to the notice to be given the owner where material has been furnished to a contractor or subcontractor. 'Appellant's counsel recognizes the fact that there is lack of harmony between § 6237 as amended, and § 6238; but, as we understand him, he contends for a construction of the latter section which will make it harmonize with the other, and to 'this end he urges that § 6238 should be construed as giving the materialman a lien on each separate dwelling or structure, although the material was sold under an entire contract, provided a separate itemized account is kept of the material sold for each building. The insuperable obstacle in the way of such a construction is the plain wording of the statute to the contrary, for the language clearly confers the right to file a single lien upon all the buildings, erections, or improvements where the labor is done or material furnished therefor under a single contract; and it provides that upon the foreclosure of such a lien the court may, where such buildings, erections, or improvements are upon separate farms, tracts, or lots, apportion the amount of the claim among the several farms, tracts, or lots in proportion to the enhanced value of the same, caused by means of such labor or materials, where such apportionment is necessary to protect the rights of third persons. That plaintiff was authorized to file one lien statement covering both buildings is settled in this jurisdiction. Stoltze v. Hurd, 20 N. D. 412, 30 L.R.A.(N.S.) 1219, 128 N. W. 115, Ann. Cas. 1912 C, 871; Meyer Lumber Co. v. Trygstad, 22 N. D. 558, 134 N. W. 714. See also Johnson v. Salter, 70 Minn. 146, 68 Am. St. Rep. 516, 72 N. W. 974, and cases cited. We are forced to conclude, therefore, that appellant's contention under point 1 is without merit.

Under point 2 appellant's counsel asserts as a legal proposition that "where there is a divisible contract, or two contracts for the furnishing of materials in the erection of two dwellings upon two different lots, even though owned by the same party and constructed about the same time, a single or joint lien cannot be filed therefor upon both buildings and lots." We find it unnecessary, however, to consider this question, for we agree with the trial court that the material was furnished by plaintiff under but one contract. The finding to such effect by the trial

court is, we think, in accordance with the weight of the testimony. The record discloses that the building material in question was used in the construction of two dwelling houses upon a single tract of land having a frontage of 100 feet on Budge avenue, and consisting of four contiguous lots, the dimensions of each being 25x140 feet. These dwellings were constructed between April 25th and July 14, 1910.

The witness Crawford, who was in plaintiff's employ and had charge of the sale and delivery of stock from its yards at the time in question, testified as follows:

Q. At the time Mr. Swenson agreed to accept your figures of $331, what is the fact as to whether he ordered the material for the second house at the same price?

A. He said he would buy the two houses, provided I would add 600 feet of casing and 8 rolls of string felt *and we closed the deal on that basis.*

Swenson does not directly contradict Crawford on this point, and we think the trial court was amply justified in accepting such testimony as controlling. It is true that there is considerable testimony in the record tending directly, as well as indirectly, to show the existence of two contracts; but when the entire testimony is weighed and considered together, much of the testimony which appears to be inconsistent with Crawford's testimony above quoted is susceptible of explanation, and is explained so as to harmonize therewith. It would serve no useful purpose to review such testimony at length in this opinion. Suffice it to say, as above stated, that we are satisfied with the correctness of the trial court's findings on this issue, and appellant's second point need not be further considered.

Under point 3 it is contended that under the statute a mechanics' lien can only be filed against the building and the particular lot upon which the same is situated, and that, because one of these buildings was erected on lot 5 and the other on lot 7, that a lien filed on the entire property was and is a nullity. We do not think there is any merit to such contention. These four contiguous lots should be treated as a single tract 100x140 feet in size; but in any event, under the provisions of § 6238, Rev. Codes, it was proper, in view of the fact that

these dwellings were constructed under a single contract, for plaintiff to file a single lien upon both buildings and the lots upon which they stand; and we think lots 6 and 8 surely must be deemed appurtenant to lots 5 and 7 respectively, within the meaning of the mechanics' lien statute. See 20 Am. & Eng. Enc. Law, 2d ed. 286, and cases cited.

Under point 4, appellant contends that, even though it be conceded that the contract herein is single and entire; and, further, that a lien for a single contract can be spread upon buildings situated upon different lots,—that the alleged lien is a nullity because plaintiff did not comply with chapter 158, Laws of 1909, by keeping a separate itemized account of the materials furnished for such buildings. It is true the statute is explicit on this point, and any material departure therefrom will deprive a person of the right to file a lien. The record discloses, however, that a separate itemized account was kept by plaintiff in accordance with the statute, with the exception of one item amounting to $10.83 for materials furnished to Swenson to be used elsewhere, which found its way in this account purely through a clerical error; and we do not think a fair construction of the statute requires us to hold such unintentional mistake or clerical error by plaintiff's clerk or employee, fatal to plaintiff's right to file a lien. The construction contended for, as applied to the facts in this case, would be grossly unjust and unreasonable. We cannot believe that it was the legislative intent to deprive a person of a lien who, in good faith, has attempted to comply with the statute, but, through an unintentional mistake or clerical error as to an item of minor importance, has failed to literally comply therewith. A liberal rule for the construction of mechanics' lien statutes has been adopted by this court. Turner v. St. John, 8 N. D. 245, 78 N. W. 340; Salzer Lumber Co. v. Claflin, 16 N. D. 601, 113 N. W. 1036. Our views, as above expressed, find support in the following authorities: Turner v. St. John, supra; Griff v. Clark, 155 Mich. 611, 130 Am. St. Rep. 582, 119 N. W. 1076, 29 L.R.A.(N.S.) 305, and case note; Coughlan v. Longini, 77 Minn. 514, 80 N. W. 695; 27 Cyc. 200; 20 Am. & Eng. Enc. Law, 408.

Under his point 5, appellant asserts that the alleged lien is a nullity because the lien statement contains no proper verification; it appearing that Crawford, who made the same, omitted to sign it. Our attention is called to the fact that the only evidence upon the question

as to whether Crawford subscribed and swore to the affidavit is that of the witness Haggerty, the notary, who testified that the same was signed and sworn to by Crawford before him, as a notary public, on the date which it bears. The original statement for lien is before us, and it appears therefrom that Crawford signed the same as agent for plaintiff, but he did not sign the affidavit of verification which is on the same sheet immediately following such statement, nor do we think it was necessary that he should do so. Section 7266, Rev. Codes 1905, defines an affidavit as a written declaration under oath. It seems to be well settled that, in the absence of a statute or rule of court requiring the affiant to subscribe his name to the affidavit, it is not necessary for him to do so. Bates v. Robinson, 8 Iowa, 318; Norton v. Hauge, 47 Minn. 405, 50 N. W. 368; Petaluma v. White, 152 Cal. 190, 92 Pac. 177; A. P. Hotaling & Co. v. Brogan, 12 Cal. App. 500, 107 Pac. 711; 2 Cyc. 26, and numerous cases cited. It is true the rule as announced by a few courts is to the contrary; but the great weight of authority holds, and we think the better rule is, as we have stated. There is nothing in the opinion in Turner v. St. John, 8 N. D. 245, 78 N. W. 340, which conflicts with our holding as above announced.

Under point 6, appellant contends that the plaintiff did not comply with § 6240, Rev. Codes, which requires the lien claimant to file with the clerk of the district court "a just and true account of the demand due him after allowing all credits," etc. In support of such contention, our attention is called to the fact that in the lien statement, as well as in the itemized account attached thereto, a claim is made for $100 more than the amount due. Appellant's contention is without merit. The itemized account shows the total debits to be $940.22 and the total credits $101.70, and, in striking a balance, an error of $100 was made in subtracting the credits from the debits. It is apparent on the face of the exhibit that this was a mere mistake, and such error in the balance naturally found its way into the lien statement. Under the authorities heretofore cited, it is clear that such an error will not nullify the lien. For the same reason the item of $10.83, heretofore mentioned and which was through error included in the account and lien statement, does not affect the validity of plaintiff's lien. The trial court properly deducted these two items from the amount of plaintiff's recovery. Appellant also asserts that the itemized account is

not just and true, for the reason that it omits two credits which he claims should be made, one for $150 and the other for $400, and this necessitates an inquiry as to the correctness of such contention. The trial court found in plaintiff's favor on this issue, holding that the only credits to which Swenson was entitled are the amounts credited in the account, aggregating $101.70. We are satisfied with the correctness of the trial court's finding. The item of $150 consisted of a check delivered by one Hatcher to Swenson, but made payable to the Robertson Lumber Company, and represented the proceeds of certain loans negotiated by Swenson through Hatcher. So far as the evidence discloses, Swenson had the right to direct the application of such payment wherever he pleased. The check represented money belonging to him. But whether, as between himself and Hatcher, this is true or not, plaintiff had no notice which would interfere with its right, as well as its duty, to make such application as Swenson directed. The notation "Budge ave. cottages," in the lower left-hand corner of the check, was of no significance so far as plaintiff was concerned; and it did not operate to impute to plaintiff any notice, even of Hatcher's desire, that the check should be applied on any particular indebtedness owing by Swenson to plaintiff. That Swenson directed the application thereof on indebtedness other than the account in question is, we think, very clearly established by the weight of the evidence. Most of it was applied in payment of a note held by plaintiff against Swenson, which note was at the time canceled and delivered to him, and the balance on another account.

Much of what we have said of the alleged payment of $150 is applicable to the alleged payment of the $400 item. Except as to the latter the check was drawn by Hatcher and made payable directly to Swenson, who indorsed the same to plaintiff. The money represented by such check belonged to Swenson, and so far as plaintiff is concerned Swenson had the right to direct its application; and we think it reasonably clear from the testimony that he directed it to be applied not on the account in question, but on another and older account owing by him to the plaintiff; and we are convinced from the record that the findings of the trial court on this issue are correct. Under the facts there is no room for applying the equitable doctrine governing applications of payments invoked by appellant's counsel.

It is next asserted by appellant that the lower court erred in holding the lien of appellant's mortgages inferior to plaintiff's lien, it being asserted by appellant that such mortgages were given to secure the purchase price of the lots. Such contention must likewise be overruled for the obvious reason that there is no evidence from which it can be determined that the mortgages were given for such purpose. It is true Hatcher testified that these lots were sold to Swenson on contract in January, 1910, and that a deed was given to him in June of that year, and that Hatcher Brothers made four loans secured by mortgages on these lots "to assist in the payment of labor and material entering into the construction of the houses, and partly to cover the balance due on the purchase price of the lots." But such loans were not closed until after these dwellings were constructed or were in course of construction, and he admits knowledge of the fact that such houses were being constructed on the property and that plaintiff was furnishing the material therefor. There is no proof of what the purchase price was, nor as to what part, if any, of such purchase price was included in the notes secured by the two mortgages now held by appellant, and manifestly there was no foundation in the evidence for a finding that any part of such notes represent such purchase price.

Next, it is appellant's contention that the trial court erred in not suppressing the deposition of the witness Crawford, which was taken at Pontiac, Michigan, on October 14, 1911, the notice to take such deposition having been served on appellant's counsel on October 10, 1911. We do not think there is any merit in this point. No claim is made that, owing to the brief time allowed, appellant was, in fact, prevented from appearing; and, furthermore, we think there was, in fact, sufficient time allowed in which an appearance might have been made by the use of due diligence.

We have considered the other questions raised by appellant's counsel and find no merit therein; and we are convinced, from the entire record, that the decision of the trial court was in all things correct, and the same is accordingly affirmed.