LUKE P. WALSH, Respondent, v. HAVELOCK COAL COMPANY, Appellant, JOE WALSH, Charles L. Rafferty, Charles Ross, and John Adams, Respondents, and CHARLES YORKSTAD, Intervener and Respondent.

(213 N. W. 23.)

**Mines and mining — persons entitled to miners' lien.**

1. One who performs labor in the operation of a coal mine as a pit boss, mining engineer and superintendent, and assists in timbering the mine and in laying out and supervising runs, is entitled to have and claim a miner's lien, under § 6836, Comp. Laws 1913.

**Mines and mining — miner's lien — who entitled to.**

2. Section 6840, Comp. Laws 1913, which reads: "When any work and labor has been performed . . . under a written contract, the same or a copy thereof shall be filed with such account and description," is construed and *held* to apply to a case where the agreement between the parties is evidenced by a written contract, within the common acceptance of that term, and to have no application to a contract evidenced in part by a letter.

**Mines and mining — contract evidenced in part by letter need not be filed.**

3. Contentions on the part of the appellant (1) that the lien was prematurely filed; (2) that there was no proof that the lien was recorded; (3) that there was no evidence showing that the labor for which a lien is claimed was performed on the particular mine on which it is claimed; for reasons stated in the opinion, held not well taken.

**Appeal and error — mines and mining — contentions as to lien not well taken.**

4. For reasons stated in the opinion, the judgment is held to be excessive and it is modified.

Appeal and Error, 3 C. J. § 589 p. 696 n. 61; 4 C. J. § 3170 p. 1158 n. 22. Mines and Minerals, 40 C. J. § 845 p. 1165 n. 27; p. 1166 n. 35; § 855 p. 1174 n. 16; § 858 p. 1174 n. 23 New; § 890 p. 1183 n. 97.

Opinion filed April 5, 1927.

Appeal from the District Court of Hettinger County, *Lembke, J.* Modified and affirmed.

*Jacobsen & Murray,* for appellant.

"When a claim of lien is prematurely filed it confers no right for a lien." McCreary v. Toronto Midway Oil Co. (Cal.) 175 Pac. 87.

"The work for which a lien on a mine is given is that which is performed in the development and conservation of the mines and the results of which become incorporated with the mine so as to constitute a part of its value." International Trust Co. v. Lowe (Colo.) 180 Pac. 579.

"One employed by a mining company as a watchman and to collect accounts due the company is not entitled to a lien on the property of the company to secure the payment for his services." Hunt v. Stribling (Okla.) 157 Pac. 741.

" 'Labor' mentioned in miners' lien statute means actual physical labor unequivocally performed on the property." Gardner v. Sullivan Mfg. Co. 133 N. E. 31.

*Crawford, Cain, & Burnett,* for respondent.

"A watchman's services come within the statute and are not of a professional or supervisory nature so as to deprive him of a lien." Idaho Min. Co. v. Davis, 59 C. C. A. 200, 123 Fed. 396.

"That an overseer and custodian of a mine had a lien because the statute did not restrict the labor to any particular class of laborers or kind of labor performed, but gave the lien for any labor performed for the corporation." McLaren v. Byrnes, 50 Mich. 275, 45 N. W. 143.

BUTTZ, Dist. J. The defendant Havelock Coal Company is the owner

of a coal mine in Hettinger county. Plaintiff Walsh was its employee. His duties were those of pit boss, mining engineer, manager and superintendent; he assisted in timbering of the mine, laid out and supervised runs, and in slack times he would "go down and shoot and load cars." During the season when mining operations were nearly at a standstill because of the unseasonableness of the product, he went out on the road to make collections and sell coal. All these services were included in his claim of a miner's lien filed under § 6836, Comp. Laws 1913, which reads:

"Lien for work or material furnished. Every miner or other person, who at the request of the owner, or his agent, of any lode, lead, ledge, mine or deposit bearing gold, cinnabar or copper, or of any coal bank or mine, or at the request of any contractor or subcontractor, shall perform any labor whatever on such mine or furnish any timber, rope, nails or any other materials for timbering shafts or levels for the mine owned by such owner, or who shall furnish any kind of materials for erecting any windlass, whims or any other hoisting apparatus or machinery, or for any car track, cars, tunnels, drifts or openings thereon, or shall perform any labor in any tunnel shall have a lien upon such lode, lead, ledge, mine, deposit, bank or tunnel to secure the payment of the same."

From a judgment foreclosing the lien defendant appeals, stressing the point that plaintiff was not entitled to a lien because he performed no work of a character for which a lien is granted; that his services as a whole did not preserve, improve or benefit the plant, but depreciated the mine by subtracting its substance in digging coal for market. It argues that mechanic lien laws contemplate only the securing to laborers, mechanics and materialmen such sums as may be their due because of labor or services rendered or materials furnished which directly enhance the value of property to which they have contributed. It cites and relies on, inter alia, Lindemann v. Belden Consol. Min. & Mill. Co. 16 Colo. App. 342, 65 Pac. 403, and International Trust Co. v. Lowe, 66 Colo. 131, 180 Pac. 579. The real issues decided therein differ entirely from the case at bar, and these cases are not in point. In the Lindemann Case, for instance, the precise point decided was that a geologist employed to examine and explore a mine and the surrounding country to ascertain the mineral character of the property and its possibilities of production, was not entitled to a miner's or mechanic's lien under a

statute giving one a lien for work done in "the development, preservation or working of the mines." But, if some courts are committed to the theory that only such services are lienable under miner's lien laws as enter into an improvement upon or the development of the property or which enhance the value of that property or work its preservation or development, we are unable to agree with their reasoning. Our statute was originally part of chapter 41 of the Laws of 1879. Turning to the history of that period it will be remembered that in the early 70's gold had been discovered in the Black hills of Dakota territory, that a tremendous rush had been made into that region and that in 1874 the federal government detailed General Custer and a command, and later sent Professor Jenny's scientific expedition, to investigate and report upon the situation, with the result that new treaties were made with the Indians and this El Dorado thrown open to the public in 1877. Thousands of prospectors and miners came into the region, great numbers of them employing others to assist them on various terms. Many of these employers were financially irresponsible; the result was the enactment which has come down to us in the section quoted. Not alone the thought of protecting those who might furnish labor and services and material for the opening and construction of new mines gave birth to this law; unquestionably it was the intent as well to protect the hapless and helpless worker with pan or pick and shovel engaged in washing, digging or producing gold and other minerals. Reading this statute in view of the history of its origin, we conclude that the object of the legislature was two-fold: first, to give security to those who furnished services or labor in the opening and building of a mine and to those who furnished materials to that end so these persons might have security for those things which they had contributed to enhance the value of the property; and, second to secure payment to those whose services had added to the wealth and profits of the owner by bringing forth to him the products which were sought. We have no dispute with that line of decisions which holds that the ordinary mechanic's lien is bottomed upon the theory of enhanced value. With such lien that is the only reasonable or sane conclusion to be reached. A destruction or demolition of buildings or property of that nature would ordinarily be of little or no value. But in providing a means of securing the value of his services to the laborer who digs precious metals and minerals from the soil we have a different

viewpoint, an entirely different situation and which involves a wholly different principle. In the first case the owner's property goes as security under the lien for the enhancement of its value. In the latter case the same property is subjected to a lien in favor of the person who by working upon that property has produced therefrom wealth which has gone into the owner's pocket. If there is any good reason for discriminating between the two situations it would seem fairer to give a lien in the latter case than in the former, because in the latter the actual wealth has passed into the personal possession of the owner, while in the former his property has been enhanced in value either actually or in theory in the hope or prospect only of this bringing him tangible returns later. In these views we are sustained by the decided cases.

In Higgins v. Carlotta Gold Min. Co. 148 Cal. 700, 113 Am. St. Rep. 344, 84 Pac. 760, the supreme court of California, referring to a similar statute, says:

"The purpose of the statute obviously is to allow a lien for mining work done upon a mine against the estate or interest therein of the person who is to be benefited thereby.  .  .  ."

Our conclusion is also in accord with the reasoning of the supreme court of Idaho in the case of Thompson v. Wise Boy Min. & Mill. Co. 9 Idaho, 363, 74 Pac. 958. In that case appellants had cited a line of cases holding that to be entitled to a lien the lienor must have added to the value of the property. The Idaho court says:

"Appellants seem to cite these authorities for the benefit of the reasoning contained in them to the effect that liens are allowed because the claimant has done some work in or upon the property which tended to improve the same or enhance its value, and the labor thereby becomes a part of the property upon which he claims his lien. This reasoning was usually correct, under the original mechanic's lien laws enacted for the protection of workmen on buildings and structures where their labor or material actually entered into the structure, and thereby became a part of the property upon which they sought to enforce their liens. It seems to us, however, that, as these laws have come to be extended to mines and mining properties, this line of reasoning has, to a great extent, become faulty. To say that the laborer who goes into the placer mine and washes out all the gold it contains, or into a quartz mine and extracts and removes the values it contains, has added to the value of

the mines, is not a course of reasoning that appeals to us very forcibly. The legislature, in enacting these laws, evidently did not have in mind the protection of the mine owners but rather the protection of the laborers. They were not contemplating, when they enacted this law, the probability of the laborers enhancing or depreciating the value of the prospects, mining claims, or mines, as the case might be, but, rather, that the men who were employed and sent out to do work upon such properties, should be entitled to a lien on them for their services. To say that the laborer is worthy of his hire is to tell him what he already knows; but what he wants to know, and what the Legislature evidently intended, is that this maxim will be carried a step further and that he will be assured that he is not only worthy of his hire, but that he will get his pay, and that the property upon or about which he worked shall be liable for such pay."

Miner's liens for wages are for the laborers' protection only. Nor will it avail to say with counsel: "The only possible thing a coal miner could have a lien on would be the coal mined." The Legislature has provided no such lien and none exists independent of the statute; and this failure to so provide was for the evident good reason that a lien on mined coal which is immediately distributed to the far corners of the earth, wholesaled, retailed and quickly consumed, almost before the miners' wages are due, would be utterly worthless in practice. Such lien would ofttimes create great hardships on distributors and purchasers of mine products, for lack of any practical way of protecting themselves against such liens. It may be noted in passing that none of the miners' lien statutes are in exactly the same language as is ours, but the principles underlying them and the situations calling these laws into being are the same in all.

The terms "miner or other persons" and "shall perform any labor whatever" as found in this enactment comprehends not only the least skilled and lowest in degree of workmen, but those of the highest intelligence and attainments in mining operations,—the gang boss, the foreman, the superintendent and the manager as well. The fact that such an employee in times of stress or slackness of business turns in part from the actual production to the disposition of and collecting for the produce sold makes no difference so long as his employment is not chiefly of that character but incidental only. The most that may be said for

this contention is that the small portion of his time thus spent might have been deducted. Appellant made no serious effort to isolate or distinguish that element and cannot now be heard to complain.

In this mine plaintiff was the most important factor in actual production, the directing head, furnishing the brains of the organization and even when necessary for example or leadership or to avoid idleness took on the actual hard manual labor of pick and shovel. His services in timbering and in laying out runs was certainly constructive work as well. Most surely he comes within the provisions of the statute designating those entitled to a lien. This position is supported by the great weight of authority in other jurisdictions. Cullins v. Flagstaff Silver Mine Co. 2 Utah, 219, 9 Mor. Min. Rep. 412 (affirmed in 104 U. S. 176, 26 L. ed. 704); Capron v. Strout, 11 Nev. 304, 9 Mor. Min. Rep. 391; Idaho Min. & Mill. Co. v. Davis, 59 C. C. A. 200, 123 Fed. 396; Keystone Min. Co. v. Gallagher, 5 Colo. 23, 9 Mor. Min. Rep. 406; Lockhart v. Rollins, 2 Idaho, 540, 21 Pac. 413, 16 Mor. Min. Rep. 16; Rara Avis Gold & S. Min. Co. v. Bouscher, 9 Colo. 385, 12 Pac. 433; Pendergast v. Yandes, 124 Ind. 159, 8 L.R.A. 849, 24 N. E. 724; McLaren v. Byrnes, 80 Mich. 275, 45 N. W. 143; Tredinnick v. Red Cloud Consol. Min. Co. 72 Cal. 78, 13 Pac. 153; Malone v. Big Flat Gravel Co. 76 Cal. 578, 18 Pac. 774; Williams v. Mountaineer Gold Min. Co. 102 Cal. 134, 34 Pac. 702, 36 Pac. 388; Hines v. Miller, 122 Cal. 517, 55 Pac. 401, 19 Mor. Min. Rep. 609; Taylor v. Smith, 1 Chest. Co. Rep. 106; Thompson v. Wise Boy Min. & Mill. Co. supra.

Section 6840 Comp. Laws 1913, providing for the filing of a miner's lien says that "when any work and labor has been performed . . . under a written contract, the same or a copy thereof shall be filed . . . as a part of the lien claim. A part of the dealings between Walsh and appellant was in the form of a letter written by Walsh and appellant contends these services were therefore performed under a written contract and hence such letter or copy thereof must have been filed. We are of the opinion that this did not constitute a "written contract" such as the statute contemplates or requires to be filed.

It is argued that the lien is void because it was not, as required by the statute, "recorded in a separate book to be provided for that purpose by such clerk of court." Such failure was not that of Walsh; his duty was fully performed by the filing with the clerk of the proper lien

statement within the statutory time. The statute quoted points out the clerk's duty, not that of the lien claimant.

Appellant claims the lien to have been filed before plaintiff's employment ended and therefore prematurely. Such objection cannot be raised in this court for the first time; it was not made an issue on the trial but it was there stipulated that these liens "were filed as miners' liens within sixty days from the termination of such employment with the Havelock Coal Company,"—which satisfies the terms of the statute which requires that such lien claim shall be filed "within sixty days from the time of completing such labor."

There is a contention that the judgment is for an excessive amount. This contention is founded largely upon a construction of the contract at variance with that adopted by the trial court. The trial court apparently gave to the plaintiff tonnage allowance during a period when the mine was not in operation. We are of the opinion that the contract should not be thus construed; that is, under the contract the plaintiff was entitled to the tonnage allowance for only such time as the mine was in operation. Upon the order of this court, counsel have filed additional briefs presenting their respective views as to the state of the accounts. A careful consideration of the record, in the light of such briefs, and of the construction of the contract adopted by this court, differing somewhat from that of the trial court, leads to the conclusion that the judgment is excessive and should be reduced to the amount of $920.53. As so modified, the judgment appealed from is affirmed, appellant to recover costs on this appeal.

BIRDZELL, Ch. J., and BURKE, CHRISTIANSON, and NUESSLE, JJ., concur.

BURR, J., did not participate, Honorable C. W. BUTTZ, Judge of the Second Judicial District, sitting in his stead.