CARL M. LARSON, Plaintiff and Respondent, v. JOHN HENRIKSEN, Ludvig Henriksen, and James McCarthy, Defendants. JAMES McCARTHY, Defendant and Appellant.

(59 A.L.R. 543, 220 N. W. 641.)

110

Opinion filed July 26, 1928.

*McGee & Goss* and *B. L. Wilson,* for appellant.

L. J. Palda, Jr., C. E. Brace, and Robt. W. Palda, for respondent.

BURR, J. The defendant McCarthy is the owner of the west half of section 21, township 162, range 93, and on March 17, 1921, executed a farm contract, Exhibit "A" with his codefendants for the farming of this land for the years 1921 to 1925, inclusive, under the usual cropper's contract and at the same time he and his codefendants and one H. J. Hjermstad entered into the written contract known as Exhibit "B," containing the following provisions:

"The parties of the first part hereby covenant and agree to and with the said party of the second part for the consideration named below to open up and work a lignite coal mine on the west one-half (W$\frac{1}{2}$) section 21, twp. 162, range 93, Burke county, N. Dak.

"The parties of the first part agree to open up and work the said lignite coal mine, to furnish all material and labor of all kinds free

of charge to the second party, and the said first parties further agree to hold the second party blameless by reason of damage or accident in connection with said mining, to material or persons working in said mine.

"The first parties agree to pay the party of the second part the sum of twenty cents for each and every ton mined and sold by them during the year 1921 and winter of 1922, and twenty-five cents for each and every ton mined and sold by them during the remainder of his contract, and the second party agrees to accept said stated amounts as rents in full for all coal mined in the above stated lands, said amounts to be net to said second party, and to be paid as follows: The first settlement to be made Dec. 1st, 1921, and the first day of each month thereafter, all settlements to be made by cash. This contract is to terminate Apr. 1st, 1926."

Later Exhibit "B" was altered by Exhibit "C" so as to exclude the southwest quarter of the section except a tract 60 rods square in the northwest corner of this southwest quarter hereafter known as the mine. H. J. Hjermstad is not connected with this case. The defendants John Henriksen and Ludvig Henriksen opened a strip mine on this tract of 60 rods square and "mined, marketed and sold coal therefrom until on or about the month of December, 1925, at which time Henriksen Bros. filed a voluntary petition in bankruptcy—and were later discharged in bankruptcy." At the time of their bankruptcy they were indebted to the defendant McCarthy on account of royalties for the coal mined and sold amounting to over $13,000, no portion of which has been paid, and on March 5, 1925 had given defendant McCarthy a mortgage, Exhibit "D" on all their personal property including "about 20,000 tons of coal stripped and to be stripped during the season of 1925" as security for this indebtedness. The notes given contemporaneously with this mortgage became due November, 1925, and the four months following. When the mortgagors defaulted in their payment the defendant McCarthy cancelled their leases.

There is no claim that the defendant McCarthy in any way operated the mine or took charge of it or that he was connected with it in any way other than that he was the owner of the land and had rights under Exhibit "B."

All of the accounts involved in this action were incurred "during

the two years prior to December 3, 1925." The plaintiff claims to have furnished "oils, gas, and grease, to be used, and which were used by the said defendants John Henriksen and Ludvig Henriksen, in and about the operation of said coal mine" and he is the assignee of thirty-four other claims by different individuals who performed work, labor and services for the said Henriksen Bros. in and about the mine or in aiding in marketing the coal. The plaintiff and each of his assignors filed miners' liens, claiming liens on the whole of the southwest quarter of section 21, all of the liens being filed on or about December 15, 1925. The plaintiff commenced an action to foreclose all of these liens and the trial court entered judgment in his favor in the sum of $6,609.88, ordering a sale of the northwest quarter of section 21 to satisfy said judgment. Defendant McCarthy appeals and demands a trial de novo.

It is beyond dispute that the men who claimed miners' liens were all employed by Henriksen Bros. and that all of the merchandise and materials purchased were purchased by Henriksen Bros. It is conceded by the respondent that unless Henriksen Bros. were the "agents" of defendant McCarthy there are no liens on McCarthy's interest in the land. Respondents contend in their brief that the appellant says: "An analysis of the sections of the statute set out above, leads to but one conclusion; the miner or other person must perform the work and labor, or furnish materials at the request *of the owner or his agent.* There must be a contract, either express or implied, with the owner or his agent, and in the absence of this contract there can be no recovery against the owner," and that they have no quarrel with this contention whatever. They go further and say "we contend that Henriksen Bros. were by virtue of the lease (Exhibit B) the agents of McCarthy for the purpose of operating the mine and of employing miners, and purchasing mining necessaries within the contemplation of the statute."

There are two points involved in this case: Were Henriksen Bros. such agents of the defendant McCarthy; and, if so, is the plaintiff entitled to a lien for the character of the work done; and for the materials furnished? The general rule is that the law providing for miners' liens is to be construed liberally. Flagstaff Silver Min. Co. v. Cullins, 104 U. S. 176, 26 L. ed. 704. This court in Walsh v. Havelock Coal Co. 55 N. D. 284, 289, 213 N. W. 23, quoted with approval this language

from the case of Thompson v. Wise Boy Min. & Mill. Co. 9 Idaho, 363, 74 Pac. 958: "The legislature . . . evidently did not have in mind the protection of the mine owners but rather the protection of the laborers. They were . . . contemplating . . . that the men who were employed and sent out to do work upon such properties, should be entitled to a lien on them for their services."

This court has adopted the general rule of a liberal construction of the provision of lien laws, after the claimant has brought himself within the provisions of the statute. See Salzer Lumber Co. v. Claflin, 16 N. D. 601, 113 N. W. 1036. Therein this court was dealing with the mechanic's lien law and stated that such law "is remedial, and should be liberally construed to effectuate its purposes." The same principle is set forth in Langworthy Lumber Co. v. Hunt, 19 N. D. 433, 437, 122 N. W. 865, and Robertson Lumber Co. v. Clarke, 24 N. D. 134, 140, 138 N. W. 984; but this means there is to be a liberal construction after the claimant has brought himself within the provisions of the law. As said in 18 R. C. L. 1263:

"Those claiming such a lien must nevertheless bring themselves clearly within the provisions of the statute and assume the burden of showing its basis in contract, either expressed or implied, with the owner of the mine upon which the lien is claimed."

This court in North Dakota Lumber Co. v. Bulger, 19 N. D. 516, 125 N. W. 883, adopted the same rule with reference to the mechanic's lien law. See also Davidson v. Jennings, 27 Colo. 187, 48 L.R.A. 340, 83 Am. St. Rep. 49, 60 Pac. 358; Jurgenson v. Diller, 114 Cal. 491, 55 Am. St. Rep. 83, 46 Pac. 610.

Our statute says:

"Every miner or other person, who at the request of the owner, or his agent . . . of any coal bank or mine . . . shall perform any labor whatever on such mine or furnish any . . . materials . . . for the mine owned by such owner . . . shall have a lien upon such . . . mine . . . to secure the payment of the same."

Thus the miner must show that he made a contract either expressed or implied with the owner of the mine or his agent. It is the contention of the respondent that under the provisions of Exhibit "B" Henriksen Bros. became the "agents" of the defendant McCarthy.

It is clear that Exhibit "B" is a mining lease. It is a lease of the land with the privilege of removing the minerals during the period specified. It is not a sale of the land, nor a sale of coal in the land. Henriksen Bros. and their partner had the right to go upon the land and "open up and work a lignite coal mine and for this right they were to pay royalty." It may be said to have been a license to go upon the land but there is coupled with it and inherent in it, the right to the occupancy of the leased premises for the time limited in order that they may remove "a portion of that which.constituted the land itself." "A lease of a mine is constituted by a grant of use and possession in consideration of a royalty payable as rent." 18 R. C. L. 1189. The relationship between the parties is that of landlord and tenant and not of employer and employee. Ordinarily the lessee is not an agent of the lessor. The lessor does not confide to him some business to be transacted in his name, and unless the statute makes the lessee of a mine the agent of the owner he cannot be said to be agent simply because there is a relationship of landlord and tenant, and lessor and lessee existing between them. In the case of Wilkins v. Abell, 26 Colo. 462, 58 Pac. 612, it is said:

"The lessee of mining property is not the agent of the owner, but simply has a qualified interest in the property, which entitles him to the use of it for his own benefit."

See also Moore v. Vaughn, 42 Neb. 698, 60 N. W. 914, where it is held that a lessee is not the agent of a lessor. A lessee is in no sense superintendent of the lessor in the management of the mine. The lessor has nothing to do with the management of the mine nor is the lessee a contractor for the purpose of making improvements on the mine, such as at times causes implied authority to permit liens for improvements. In Williams v. Eldora-Enterprise Gold Min. Co. 35 Colo. 127, 83 Pac. 780, the court says:

"Where labor was performed and material furnished to one in possession of and developing mining property, whose only relationship to the property, so far as concerned any requirement of work thereon, was that of a mere lessee, no lien therefor could be enforced against the owner of the mine."

In the case at bar the evidence shows plaintiff knew Henriksen Bros. were operating under a lease from appellant, but is silent as to

the knowledge of the assignors. So far as the evidence shows, all the lien claimants contracted with Henriksen Bros, in the same way as plaintiff and under no circumstances claimed they thought they were agents of appellant. So far as the evidence goes, they contracted with Henriksen Bros. for the lessee's benefit. The burden was upon the plaintiff to show that the claimants contracted with the lessor. There is no claim here that any claimant in any way thought McCarthy was interested in the development or the working of the mine, except as to his rentals. As said in Union Trust Co. v. Branch Mint Operating Co. 28 S. D. 549, 134 N. W. 65:

"No agency results from the relation of lessor and lessee for the purpose of charging the lessor's property with miners' liens for materials furnished in operating it."

The same case shows:

"A claim of lien for materials furnished to operate a mine must be founded upon a contract made with the owner either directly or through an agent."

The court in this case was construing a law quite similar to ours. Chapter 182 of the 1903 Session Laws of South Dakota being § 1631 of the Rev. Code of 1919, was the statute under consideration. This statute is very similar to ours. It says:

"Every miner or other person who, at the request of the owner or owners or his or their agents . . . of any coal bank or mine . . . shall perform any labor whatever upon said mine . . . or furnish any material . . . shall have a first lien . . . upon such mine, etc."

Respondents, so far as agency is concerned, based their case upon the rule laid down in Higgins v. Carlotta Gold Min. Co. 148 Cal. 700, 113 Am. St. Rep. 344, 84 Pac. 758. It is true the court there says "a lessee of a mine . . . is a person having *charge of mining,* within Code Civ. Proc. § 1183, giving a lien for work done in or on mines, and at the instance of the owner or his agent" that he is the agent of the owner, but an analysis of this section under consideration shows a provision where it is expressly stated that any "person having *charge of any mining* . . . shall be held to be the agent of the owner for the purpose of this chapter." It is clear therefore that this decision of the California court is based upon the statutory provision

making the lessee the agent of the lessor. Our statute contains no such provision. When it says that every miner "who at the request of the owner or his agent" performs labor and services is entitled to a lien, it means the agent in the ordinary acceptation of the term, and there is no special provision enlarging the scope of agency for the purpose of miners' liens as in the California statute.

We hold that the relationship of principal and agent does not arise from the mere relationship of lessor and lessee. The lessee is not agent of the lessor in the development of a mine unless expressly made so by statute as in the California case cited, or agency arises through the act of the principal. It is clear therefore that so far as the interest of the defendant McCarthy is concerned the claimants have no lien on the mine. It is conceded that Henriksen Bros. have no interest in the mine, and no judgment was rendered in the lower court adjudging any lien against any claimed interest of Henriksen Bros.

Appellant devotes considerable space in his brief to the discussion of whether the claims were in fact lienable; but our holding that there can be no lien against appellant's interest disposes of all the issues in the case. The judgment of the lower court is reversed, and judgment rendered for the appellant for a dismissal of the action.

NUESSLE, Ch. J., and BURKE, BIRDZELL, and CHRISTIANSON, JJ., concur.