## DOGGETT *v.* RAILROAD COMPANY.

1. Where, under the act of the State of Florida entitled "An Act to provide for and encourage a liberal system of internal improvements in this State," passed Jan. 6, 1855, a railroad was sold by the trustees of the internal improvement fund, who applied the proceeds of the sale to the purchase and cancellation of a part of the outstanding bonds of the company, — *Held,* that the purchaser of the road is thereafter required to pay, on account of the sinking-fund for which that act provides, one-half of one per cent semi-annually upon the remaining bonds, and not upon the entire amount originally issued by the company.
2. Where the receiver of the internal improvement fund who was appointed by the court filed a bill in equity to determine upon what amount of said bonds the purchaser was bound to make such semi-annual payment, — *Held,* that the holders of them were not proper parties complainant.

APPEAL from the Circuit Court of the United States for the Northern District of Florida.

This is a bill in equity filed by Francis Vose, a citizen of New York, William H. Wagner, a citizen of South Carolina, and Aristides Doggett, who was appointed a receiver of the internal improvement fund of Florida by the court below, against the Florida Land Company, to compel the company, in accordance with the provisions of an act of the State of Florida, entitled "An Act to provide for and encourage a liberal system of internal improvements in this State," passed Jan. 6, 1855, to pay said Doggett, as such receiver, one-half of one per cent on the entire amount of bonds issued by the company.

Certain lands and the proceeds thereof were set apart by said act, and constituted said fund. It was irrevocably vested in certain State officers and their successors in office, to hold the same in trust for the uses and purposes in said act mentioned, with power to sell and transfer the lands, receive payment therefor, to invest surplus moneys arising therefrom in stocks of the United States or of the several States, or in the internal improvement bonds issued under the provisions of the act, and also to so invest the surplus interest arising from said investments, and to pay out of said fund the interest from time to time as it might become due on the bonds issued by the different railroad companies under the authority of the act, and with further power to receive and demand semi-annually,

after each separate line of railroad should be completed, the sum of one-half of one per cent on the entire amount of bonds issued by such company, as a sinking-fund for the payment of said bonds as they should become due.

The Florida Railroad Company was chartered by the legislature of Florida. It accepted the provisions of the act and issued its bonds.

The third section of the act is as follows: —

" Sect. 3. Be it further enacted, that all bonds issued by any railroad company under the provisions of this act shall be recorded in the comptroller's office, and so certified by the comptroller, and shall be countersigned by the State treasurer, and shall contain a certificate on the part of the trustees of the internal improvement fund that said bonds are issued agreeably to the provisions of this act, and that the internal improvement fund, for which they are trustees, is pledged to pay the interest as it may become due on said bonds. All bonds issued by any railroad company under the provisions of this act shall be a first lien or mortgage on the road-bed, iron, equipment, workshops, depots, and franchise; and upon a failure on the part of any railroad company accepting the provisions of this act to provide the interest as herein provided on the bonds issued by said company, and the sum of one per cent per annum as a sinking-fund, as herein provided, it shall be the duty of the trustees, after the expiration of thirty days from said default or refusal, to take possession of said railroad and all its property of every kind, and advertise the same for sale at public auction to the highest bidder either for cash or additional approved security, as they may think most advantageous for the interest of the internal improvement fund and the bondholders. The proceeds arising from such sale shall be applied by said trustees to the purchase and cancelling of the outstanding bonds issued by said defaulting company, or incorporated with the sinking-fund : *Provided*, that in making such sale it shall be conditioned that the purchasers shall be bound to continue the payment of one-half of one per cent semi-annually to the sinking-fund, until all the outstanding bonds are discharged, under the penalty of an annulment of the contract of purchase, and the forfeiture of the purchase-money paid in."

The remaining sections of the act bearing upon the questions involved are set out in the opinion of the court.

The bill of complaint charges that on Nov. 3, 1870, said Vose

filed his bill in that court against Reed and others, trustees of
said fund, alleging that he was the owner of first-mortgage bonds
of the company issued under the provisions of said act; that the
company having failed to provide the interest and the sum of one-
half of one per cent per annum on the entire amount of its bonds,
and been so in default for about three years, the trustees took the
road into their possession, and sold it for $323,400 to one Dicker-
son and his associates, subject to all the provisions of the act,
and, among others, to those of its second and third sections; that
the trustees, in accordance with sect. 3, determined to apply the
amount received from the sale to the purchase and cancellation
of outstanding bonds of the company, and not to incorporate the
same with the sinking-fund provided by the act for the full dis-
charge of the bonds and interest, and by said application all of
the outstanding bonds of the company were purchased and can-
celled, except two hundred and twenty-eight, of which said Vose
owned one hundred and ninety-five, and said Wagner twelve.

It then states that said bill of complaint filed by said Vose
charges the trustees with acts of nonfeasance and malfeasance,
among others, in failing to demand from the present owners of
the railroad the sum of one-half of one per cent on the en-
tire amount of bonds issued by said railroad company; that
the change in the corporate name of the company in no wise
affected its title or removed its liabilities; and that the prop-
erty is held subject to the conditions and terms of sale, and to
the payment of said sum of one-half of one per cent.

The bill then sets up the decree appointing said Doggett re-
ceiver of all the moneys and securities belonging to said trust
fund, in the hands of the trustees, and giving him power to sue
for and collect the same; and alleges that at a final hearing a
decree was rendered directing that he be continued as receiver,
and conferring power upon him to sue for and receive all
moneys now due or which might thereafter become due to said
internal improvement fund; that he has demanded from the
trustees all the money due to said fund from the purchasers of
said road; that the trustees have wholly failed to pay it, at
times claiming that the purchasers have paid all that can be
justly claimed of them under the sale, and at other times that
the purchasers should only be called upon to pay one-half of

one per cent semi-annually on the two hundred and twenty-eight bonds actually outstanding. The bill alleges that sects. 2 and 3 of the act required the purchasers of the road to continue the payment of the one-half of one per cent semi-annually on the entire amount of the bonds issued by the company, and it prays, among other things, that the company may be adjudged and decreed to be liable to pay accordingly.

The company demurred to the bill for want of equity and for misjoinder of parties complainant. The demurrer was sustained and the bill dismissed. Doggett then appealed to this court.

The case was argued by *Mr. Theron G. Strong* and *Mr. William A. Maury* for the appellant, and by *Mr. William M. Merrick* for the appellee.

MR. JUSTICE SWAYNE delivered the opinion of the court.

This is a case in equity. The bill was filed by Doggett, as a receiver appointed in another case in the same circuit court whence this case came, and by Vose and Wagner, as co-complainants with him. The defendant demurred upon the grounds, among others, that the bill does not make a case that entitles the complainants to any relief, and that there is a fatal misjoinder of parties with respect to Vose and Wagner. The Circuit Court sustained the demurrer and dismissed the bill. Doggett thereupon removed the case to this court by appeal. With respect to the merits, the case presents but a single question ; that is, whether the appellee is bound to pay Doggett, as the receiver of the internal improvement fund of Florida, the one-half of one per cent, semi-annually, upon the entire amount of the bonds issued by the company, or only to make such payment upon the amount of such bonds as are still outstanding. The bonds were issued pursuant to an act of the legislature of Florida, entitled " An Act to provide for and encourage a liberal system of internal improvements in this State," passed Jan. 6, 1855. The road was sold, and the proceeds applied, as far as they would go, to the extinguishment of the bonds. The whole number issued was one thousand five hundred and eighteen, of $1,000 each. Twelve hundred and ninety have been retired. Two hundred and twenty-eight are still unredeemed and outstanding.

The determination of the question before us depends upon the construction and effect of the second, third, and twelfth sections of the act before mentioned.

The second section, after making the governor and other designated officers of the State trustees of the internal improvement fund, proceeds to define their powers and duties. They are empowered " to receive and demand semi-annually the sum of one-half of one per cent (after each separate railroad is completed) on the entire amount of the bonds issued by said railroad company, and invest the same in the stocks of the United States or State securities, or in the bonds herein provided to be issued by said company."

The third section provides that the bonds shall contain " a certificate on the part of the trustees of the internal improvement fund that said bonds are issued agreeably to the provisions of this act, and that the internal improvement fund, for which they are trustees, is pledged to pay the interest as it may become due on said bonds." ˙Provision is then made for the seizure and sale of the road in default of payment as required. The section thus concludes: " The proceeds arising from such sale shall be applied by said trustees to the purchase and cancelling of the outstanding bonds issued by said defaulting company, or incorporated with the sinking-fund : *Provided*, that in making such sale it shall be conditioned that the purchasers shall be bound to continue the payment of one-half of one per cent semi-annually to the sinking-fund until all the outstanding bonds are discharged, under the penalty of an annulment of the contract of purchase and the forfeiture of the purchase-money paid in."

Under these provisions the road was sold and the proceeds applied, as before stated.

The twelfth section is as follows : —

" Every railroad company accepting the provisions of this act shall, after the completion of the road, pay to the trustees of the internal improvement fund at least one-half of one per cent on the amount of indebtedness on bond account, every six months, as a sinking-fund, to be invested by them in the class of securities named in sect. 2, or to be applied to the purchase of the outstanding bonds of the company ; but it shall be distinctly understood that

the purchase of said bonds shall not relieve the company from paying the interest on the same, they being held by the trustees as an investment on account of the sinking-fund."

By the proviso in the third section it is declared that after a sale the payment of the semi-annual half per cent shall continue "until all the outstanding bonds are discharged." It is clear that it was to continue no longer. Before the sale, if the trustees should purchase the bonds as an investment for the sinking-fund the company was to continue to pay the interest upon them. This was right and reasonable. After the sale and the discharge of a part of the bonds by the proceeds of the sale, as occurred here, there is no provision for the payment of any interest. It would be wrong as to the bonds discharged by means derived from the company, and absurd as to all other bonds, — the company being deprived of all means of payment by the loss of their road. Hence, after the sale, the exaction is only that the semi-annual half per cent shall be paid, and that by the purchasers of the road; and it is expressly declared by the twelfth section that it shall be "on the amount of indebtedness on bond account." This is the requirement, and it goes no further. Upon what ground, then, can the purchasers be required to pay any thing more? There is no warrant for such a demand in the letter, meaning, or reason of the statute. The primary requirement is that the payment shall be made upon all the bonds issued, and to cease when they are all discharged. The extent of the burden assumed by the State was graduated as to each road by the total amount of its bonds. Why should not the burden of the company be diminished in the same ratio with the burden of the State? The former is to cease wholly when all the bonds are discharged. Why should it not be lessened in the exact proportion that the amount of the outstanding bonds is reduced? The contrary, we think, cannot be supported. As well might a creditor, where payments at different times have been made by the debtor, demand interest upon the whole amount of the original debt until the last dollar is paid. This, in effect, is the case made by the bill. But there is a short and conclusive answer to the claim. It is, that the twelfth section constituted a contract with the purchasers of the road. That contract was that

they should pay " on the amount of indebtedness on bond account." This was made a condition of the sale; and they so agreed, and they agreed to nothing else. This contract is binding upon both parties, and cannot be changed without their mutual consent. The language of the act is too clear to admit of doubt. In a statute " where the intent is plain, nothing is left to construction." *United States* v. *Fisher,* 2 Cranch, 386.

There is no complaint that payment upon the bonds outstanding has not been regularly made.

We have no doubt as to the merits of the bill. We think the objection of misjoinder was also well taken. The case was purely ancillary in its character. The receiver represented the court which appointed him and the trustees of the internal improvement fund. Vose and Wagner claimed to own a part of the outstanding bonds. But that gave them no standing place in the litigation. As well might every other holder of any of the bonds, however small the amount, or how numerous such holders might be, have been made co-complainants with the receiver, as Vose and Wagner. The presence of the latter as such parties was unwarranted, and if permitted, and the suit had gone on, would have incumbered the record unnecessarily and have led to confusion.

The demurrer was properly sustained.

*Decree affirmed.*