Lizzie Wolf, a widow, v. C. C. Commander, Defendant,
Florida Citrus Exchange, Garnishee.

188 So. 83.
Opinion Filed April 21, 1939.

*Huffaker & Edwards,* for Plaintiff in Error;

*Holland, Bevis & Hughes* and *Counts Johnson,* for Defendants in Error.

Per Curiam.—In this cause Mr. Chief Justice Terrell, Mr. Justice Whitfield and Mr. Justice Chapman are of opinion that the Judgment of the Circuit Court in this cause should be affirmed while Mr. Justice Brown, Mr. Justice Buford and Mr. Justice Thomas are of the opinion that the said Judgment should be reversed. When the members of the Supreme Court, sitting six members in a body and after full consultation, it appears that the members of the Court are permanently and equally divided in opinion as to whether the judgment should be affirmed or reversed, and there is no prospect of an immediate change in the personnel of the Court, the judgment should be affirmed:

therefore it is considered, ordered and adjudged under the authority of State, *ex rel.* Hampton, v. McClung, 47 Fla. 224, 37 So. R. 51, that the judgment of the Circuit Court in this cause be and the same is hereby affirmed.

Affirmed.

TERRELL, C. J., and WHITFIELD and CHAPMAN. J. J., concur.

BROWN, BUFORD and THOMAS, J. J., dissent.

CHAPMAN, J.—This case is here on writ of error to review a final judgment for the defendant below entered by the Circuit Court of Polk County, Florida. The plaintiff below obtained a judgment against C. C. Commander and two other defendants. On affidavit a writ of garnishment issued thereon and was served upon the Florida Citrus Exchange, which by its answer admitted an indebtedness to C. C. Commander for his personal services as General Manager of the Florida Citrus Exchange in the sum of $983.85. The said C. C. Commander claimed that the money held by the Florida Citrus Exchange was for personal labor and services rendered and that he was the head of a family and that said moneys were not subject to attachment under Section 5792 C. G. L., viz.:

"No writ of attachment or garnishment or other process shall issue from any of the courts of this State to attach or delay the payment of any money or other thing due to any person who is the head of a family residing in this State, when the money or other thing is due for the personal labor or services of such person."

It is admitted that C. C. Commander is the head of a family and residing in Hillsborough County, Florida, and the following facts were not in dispute, viz.:

"That the said C. C. Commander is employed by the said Florida Citrus Exchange as its general manager and is paid

a salary of more than $10,000 per year for his services in this capacity, the correct amount of such salary being unknown to the plaintiff; that the services performed by the said C. C. Commander for his said employer as its general manager and for which said salary is paid to him are services requiring special skill and intellectual fitness and for the performance of executive and administrative duties; that as such general manager of the said Florida Citrus Exchange the said Commander is not required to perform, nor does he perform, any manual labor for his said employer, and no part of the salary so paid the said Commander, and which has been attached by said writ of garnishment, is due for the performance of manual labor in any capacity."

The question presented for decision is: Does Section 5792 C. G. L., 1927, exempt from garnishment to the head of a family residing in this State only his wages due him for his manual labor and afford no protection to the head of a family for his earnings due him for personal services (other than manual labor) actually performed by him?

The question here for decision is the construction of Section 5792, *supra*. In a previous decision this Court held that the purpose of the statute is to protect citizens against financial reverses and difficulties and to permit the citizen when residing in Florida and head of a family to be secure in money coming to him for his labor and services thereby supporting his family and preventing it from becoming a public charge. The decisions are uniform in holding that a statute, like the one here, should be liberally construed, and this Court has so held with many of the other Courts of the Country. See Patten Package Co. v. Houser, 102 Fla. 603, 136 So. 316. It is pointed out that the statute *supra* was enacted in 1875 when the population of Florida was around 200,000 and the people were engaged

largely in farming and stock raising and at the time the wage earners were day laborers, and a construction of the statute should not be made to include compensation to those specially trained by education or experience or by intellectual fitness are qualified for executive or administrative duties, but should be limited to "wages due laboring men." It has been held by this Court that when the language of a statute is capable of two constructions, the courts may resort to the history of its passage through the Legislature to ascertain the legislative intent. See State v. Amos, 76 Fla. 26, 79 So. 433. The statute must be liberally contrued and the full force and effect of the legislative intent given as manifested by the language used. See State v. Beardsley, 84 Fla. 109, 94 So. 660; State v. Burr, 79 Fla. 290, 84 So. 61; Doggett v. Railroad Company, 99 U. S. 72, 78, 25 L. Ed. 301; Douglass v. McRainey, 102 Fla. 1141, 137 So. 157.

If a liberal construction of the statute is given, it is manifestly clear that the Legislature intended to maintain the financial equilibrium of each family in Florida by exempting from attachment by writs of attachments or garnishments earnings of the head of the family. The statute points out that no process shall issue by the courts of Florida when it is sought to attach the money or other thing that is due for the personal labor or services of the head of a family residing in Florida. There can be no doubt as to the power of the Legislature of Florida to enact such a law, and, by giving the words of the statute their usual and ordinary meaning and considering the intention of the Legislature, there can be no doubt as to the proper conclusion. We are not interested in the wisdom or folly of the Act but in the intention of the Legislature by enacting it.

It is suggested that an affirmance by this Court of the

judgment appealed from will protect annual salaries of citizens of Florida ranging from $50,000 to $80,000. While this conclusion may be justified, the responsibility therefor does not rest on this Court but with the legislative department of our government. We are without power to enact law or to pass upon its wisdom or folly, but our duty is to construe or interpret it according to established rules and decisions. See State v. Rose, 93 Fla. 1018, 114 So. 373; Sparkman v. State, 71 Fla. 210, 71 So. 34; State v. Burr, 79 Fla. 290, 84 So. 61; State v. Knight, 98 Fla. 891, 124 So. 461; State v. Beardsley, 84 Fla. 109, 94 So. 660; Snowden v. Brown, 60 Fla. 212, 53 So. 548; Realty Bond, etc. Co. v. Englar, 104 Fla. 329, 143 So. 152; Douglass v. McTainey, 102 Fla. 1141, 137 So. 157; Cragin v. Ocean, etc. Realty Co., 101 Fla. 1337, 135 So. 795.

We have examined a number of cases from other jurisdictions involving statutes similar to the one now before the court and find the trend thereof is not only for a liberal construction but to sustain in many instances broader exemptions than the Commander claim in the case at bar. See Shriver v. Carlin & Fulton Co., 155 Md. 51, 141 Atl. 434; Pendergast v. Yandes, 124 Ind. 159, 24 N. E. 724, 8 L. R. A. 849; Dayton v. Ewart, 28 Mont. 153, 72 Pac. 420, 98 A. S. R. 549; Consolidated Coal Co. v. Keystone Chemical Co., 54 N. J. Eq. 309, 35 Atl. 157; Hamburger v. Marcus, 157 Pa. St. 133, 27 Atl. 681; Laird v. Carton, 196 N. Y. 169, 89 N. E. 822, 26 L. R. A. (N. S.) 189; Brown v. Hebard, 20 Wis. 326, 91 Am. Dec. 408; Wilmer v. Mann, 121 Md. 239, 88 Atl. 222; Koppen v. Union Iron & Foundry Co., 181 Mo. App. 72, 163 S. W. 560; Bell v. Indian Live-Stock Co., (Tex. Sup.), 11 S. W. 344.

The judgment appealed from is hereby affirmed.

TERRELL, C. J., and WHITFIELD, J., concur.

Brown, J., (dissenting)—Sections 5792 and 5793 C. G. L. constituted Sections 1 and 2 of Chapter 2065 of the Laws of Florida adopted by the Legislature of 1875. A reference to the Act of 1875 shows that the title to this Act reads as follows:

"An Act to prohibit the attachment of money due as wages to laboring men."

The Revised Statutes of 1892, the General Statutes of 1906, the Revised General Statutes of 1920 and the Compiled General Laws of 1927 all place these two sections of said Act of 1875 under the sub-chapter heading of, "Exemption of wages from garnishment." Thus the title of the original Act and the subsequent revisions of general laws adopted by the legislature, as well as the compilation of laws made in 1927, all indicate that the intent of this statute was to protect from attachment or garnishment the wages of laboring men who were the heads of families. To give the effect of exempting from attachment or garnishment the salaries of executive officers of corporations earning salaries as large as, in this instance, $10,000 a year or more, would be to give an interpretation of the meaning and intent of this statute which its title at the time it was enacted, and the headings given to it by the revisers of statutes since that time, never contemplated.

The words "personal labor or services" contained in Section 1 of the Act should be construed in the light of the title to the Act.

At the time this Act was adopted the Constitution of 1868 was in effect, and that constitution, like the present constitution, exempted from legal process homestead real estate together with $1000 worth of personal property. This is an implied prohibition upon the legislature from exempting any larger amount of personal property than that named in the Constitution. Both wages and salaries

are a form of personal property. The statute as construed in the majority opinion is out of all proportion to the amount of the exemption named in the Constitution as to personal property.

Can it be doubted what the legislature of 1875 meant by using in the title of Chapter 2065 the language "money due as wages to laboring men?" There might be some doubt had the legislature used the word "wages" only, for some courts have construed "salary" as being comprehended in the term "wages." But no doubt whatever was left when the legislature in the title of the Act, used the language "money due as wages to laboring men." The words "any person" as used in the body of the Act is clearly limited by the title to "laboring men."

It is well settled that the title of an Act is a part of the Act itself and can be looked to in construing the meaning of the Act. Furthermore, to give it the construction contended for by defendants in error in this case would make the body of the Act broader than its title.

The word "services" as used in the phrase "personal labor or services" should therefore be construed in connection with the title of the Act, and the words "personal labor" just preceding it. Indeed, to bring the language of the Act within the meaning of its title the words appearing in Section 1 "personal labor *or* services" might well be read "personal labor *and* services." In ascertaining the meaning and effect to be given the word "or" when construing a statute, the intent of the legislature is the determining factor. Pompano Horse Club v. State, 111 So. 801, 93 Fla. 415.

The Constitution requires the subject of a statute to be expressed in its title. This is mandatory. The title is an essential part of the Act, and the subject expressed therein limits the valid scope of the Act. An Act should not by

construction be extended beyond the reasonable scope of its title. There is a presumption against any other purpose other than that expressed in the title.

Evidently the legislature of 1875 felt that the constitutional exemptions did not afford sufficient protection to laboring men; hence the enactment of Chapter 2065, the effect of which was to prevent the harrassment of laboring men with writs of garnishment and attachment issued out of the various inferior courts of the State.

The changes made in the original statute by the revisers, by adding the words "or other process," after the word "garnishment" and the words "or other thing" after the word "money," in Section 1 of the original Act, do not change the force of the observations above made. The use of these added words does not show any intention to enlarge the original class designed to be protected by the statute. Therefore the present statute must be considered a continuance of the old law and not a new and original enactment.

The rule of liberal construction must not be indulged to the extent of conferring privileges and benefits by construction which were not intended to be conferred by the legislature.

It is a matter of common knowledge that quite a number of business men holding important executive positions in the State are paid large salaries, quite a few in excess of $15,000 per year; some as high as $50,000 or more; yet under the construction given this statute these large salaries would be entirely exempt from attachment or garnishment or other process, no matter how just the debt sought to be collected.

My view is that the judgment below should be reversed.

BUFORD and THOMAS, J. J., concur.