### FIRST PRUDENTIAL BANK OF WEST PALM BEACH v. ROLLE.
No. 75-701-CC-11

### D. S. WOOD & ASSOCIATES, Inc. v. SJOSTEN
No. 76-6468-SP

County Court, Palm Beach County.

December 23, 1976.

In the Rolle case F. Malcolm Cunningham, West Palm Beach, for the plaintiff; David Newman, Florida Rural Legal Services,

Inc., Delray Beach, for the defendant; David G. Bazarsky, Miami, for the garnishee.

In the Sjosten case no attorney for the plaintiff; Robert P. Daniti, Legal Aid Society of Palm Beach County, for the defendant; Herbert P. Benn, West Palm Beach, for the garnishee.

DANIEL T. K. HURLEY, County Court Judge.

*Order dissolving writs of garnishment:* These cases came on separately for final hearing. They were consolidated by the court on its own motion for the purpose of discussion and rendition of the appropriate orders. Both cases present the same question — do monies which are exempt from garnishment (Fla. Stat. 222.11) lose their exempt status when deposited into a credit union account (Rolle) or into a bank checking account (Sjosten)?

From the testimony and documentary evidence introduced at each hearing, the court makes the following —

### Findings of fact

A. Eddie Lue Rolle

1. On March 3, 1976, after entry of default, the plaintiff bank obtained a final judgment against John and Eddie Lue Rolle for $1,915.12. The suit was based on the Rolles' failure to repay a loan which was evidenced by a promissory note and which was signed by Mr. and Mrs. Rolle. Subsequent to the final judgment, the husband, John Rolle, filed a notice of voluntary petition of bankruptcy. The bank thereupon sought a writ of garnishment for the wife's wages which were in the possession of her employer, Southern Bell.

2. On April 5, 1976, Mrs. Rolle filed an affidavit wherein she alleged that she was the head of a family residing in the state and consequently that her wages were exempt from garnishment under Florida Statute 222.11. At a hearing before the court, it was determined that Eddie Lue Rolle is married, but separated from her husband, John. She is the sole support of her son, age five, who resides with her. Accordingly, on May 10, 1976, the court found Mrs. Rolle is the head of a family and that her wages are exempt from garnishment. No appeal has been taken from this finding.

3. While the wage garnishment from Southern Bell was pending, the bank filed a second motion for writ of garnishment. This one aimed at funds being held by the Tropical Telco Federal Credit Union. Mrs. Rolle responded to this by filing a second motion to quash the garnishment and asserted that these monies were also derived from her wages. Prior to a hearing on this motion, the court inadvertently entered an order releasing the Telco funds to

the bank. Mrs. Rolle thereupon filed a motion to stay. A hearing on the defendant's motion to quash the writ of garnishment and on her motion to stay was held after proper notice to both parties. The court granted Mrs. Rolle's motion to stay and reserved ruling on her motion to quash — the subject of this order.

4. Eddie Lue Rolle has worked for the Southern Bell Telephone and Telegraph Company for the past five years. During that same period of time she has been a member of the Tropical Telco Federal Credit Union. She joined in order to save money and also to avail herself of its benefits: lower cost auto insurance, various discounts, and low interest rate loans. She entered into a plan whereby $50 was deducted from her salary each pay period. Mrs. Rolle testified that in recent times, she has been unable to save money and that she utilizes the credit union as a safe holding place until the money is needed for ongoing living expenses. Though she has a checking account, it contains little or no money and she has stopped using it to pay bills. Her practice now is to withdraw money from the credit union account and pay her bills in cash or with postal money orders.

5. When the writ of garnishment was served upon the credit union, a total of $85.69 was present in the defendant's account. $50 of this amount had been deposited by her employer out of her most recent paycheck; the remainder was from an earlier pay period. All of this money was identifiable and directly traceable from the defendant's wages as an employee of Southern Bell.

B. Cindy Sjosten

1. On November 3, 1976 the plaintiff in 76-6468-SP, D. S. Wood and Associates, Inc., d/b/a Snelling and Snelling, obtained a final judgment against the defendant Cindy Sjosten in the sum of $215.50. The suit was based on breach of contract for failure to repay a fee to the plaintiff employment agency. Subsequent to final judgment, the plaintiff filed a motion for writ of garnishment. The garnishee-bank, First National Bank of Palm Beach Gardens, answered that Ms. Sjosten's account had a balance of $411.98 and that the bank had placed a hold on the account for $486 which is double the amount of garnishment. The cause came on before the court on defendant's motion to quash the writ of garnishment and establish exemptions.

2. Ms. Sjosten is divorced from her husband and has custody of their eight year old daughter, Karrie Ann. They live in Boynton Beach, Florida. Though the husband has made sporadic contributions to the child's support, the mother has been the principal source of support.

3. Until she became unemployed on November 5, 1976, Ms. Sjosten worked as an interviewing clerk in the Unemployment Compensation Division of the Florida Department of Commerce. She regularly received a paycheck plus reimbursement for travel expenses. All of these monies were deposited into her checking account at the garnishee bank, First National Bank of Palm Beach Gardens. A review of Ms. Sjosten's bank statement (Pltf's Exh. #1), discloses that her account was overdrawn on October 22, 1976. Thereafter, the following sums of money were deposited: October 29, 1976 — $35.10 (travel reimbursement); November 11, 1976 — $20 (child support from husband); November 12, 1976 — $391.30 (proceeds from paycheck); November 16, 1976 — $20 (child support payment); and November 19, 1976 — $38 (deposit of defendant's personal monies).

4. The deposits of October 29th ($35.10) and November 12th ($391.20) are readily identifiable as Ms. Sjosten's wages from the state of Florida. $391.30 was a portion of her paycheck and the $35.10 was a reimbursement for travel expenses.

5. The deposits of November 11th and 16th were child support payments made by her husband (total $40).

6. Pursuant to Florida Statute 222.06, Ms. Sjosten inventoried all of the personal property in her possession and assigned a net value to said personalty of $1,249.98. This amount includes $426.40 in wages which is set forth in paragraph 4 above, and $40 in child support which is set forth in paragraph 5 above.

Based upon the foregoing findings of fact, the court reaches the following —

### Conclusions of law

Initially, I conclude that Eddie Lu Rolle and Cindy Sjosten are heads of families residing in the state of Florida. *In re Kionka's Estate,* 113 So. 2d 603 (Fla. 2d DCA 1959). As such their wages are exempt from garnishment under Florida Statute 222.11 which states —

> No writ of attachment or garnishment or other process shall issue from any of the courts of this state to attach or delay the payment of any money or other thing due to any person who is the head of a family residing in this state, when the money or other thing is due for the personal labor or services of such person.

The central question embodied in these cases, which appears to be one of first impression in the state of Florida, is whether the monies retain their exempt status when deposited in a credit union account or in a bank checking account. I conclude they do. *Kruger v. Wells Fargo Bank,* 113 Cal. Rptr. 449 (Sup. Ct. 1974);

*Miller v. Monrean,* 507 P. 2d 771 (Alaska Sup. Ct. 1973); *Stanton v. Vernon,* 229 N. W. 763 (Iowa Sup. Ct. 1930); *Rutter v. Shumway,* 26 P. 321 (Colo. Sup. Ct. 1891) 67 A.L.R. 1203; *Colonial Discount Co., Inc. v. Wilhelm,* 40 N.Y.S. 2d 298.

The first reason for this result is one of statutory construction. In *Rutter v. Shumway,* supra, the plaintiff made the same argument that has been advanced here: that the wages of the debtor are exempt from garnishment while they remain in the hands of the employer before payment, but not afterwards. The court rejected this, saying —

> The statute contains no such limitation or condition. . . . The language is unconditional and absolute that such wages "shall be exempt from levy under execution or attachment or garnishment;" and the courts cannot justly add words which would tend to defeat or restrict the manifest purpose of the statute. At 322.

Our own Supreme Court adopted a similar attitude in *Wolf v. Commander,* 188 So. 83 (1939) which was reiterated and affirmed in *White v. Johnson,* 59 So. 2d 532 (Fla. 1952). In *Wolf* the plaintiff contended that only wages derived from manual labor, as opposed to supervisory or professional labor, were exempt under the statute. The plaintiff argued that if the court failed to place a limitation on the reach of the statute, annual salaries of $50,000 to $80,000 would be exempt. The court refused to create an exception to the statute and said —

> While this conclusion may be justified, the responsibility therefor does not rest on this Court but with the legislative department of our government. We are without power to enact law or to pass upon its wisdom or folly, but our duty is to construe or interpret it according to established rules and decisions.
>
> \*       \*       \*
>
> There can be no doubt as to the power of the Legislature of Florida to enact such a law, and, by giving the words of the statute their usual and ordinary meaning and considering the intention of the Legislature, there can be no doubt as to the proper conclusion. We are not interested in the wisdom or folly of the Act but in the intention of the Legislature by enacting.

Aside from the rules of statutory construction, there is a second and equally compelling reason for rejecting the plaintiff's interpretation: it would frustrate the announced intent and purpose of the statute. This was seen by the court in *Rutter v. Shumway,* supra, when it said that such an interpretation would make a mockery of the statute. It would force the court to respond in this fashion to the head of a household —

"Yes, the money was your wages before you received it and was exempt, but having received it, it is no longer wages, but capital, and is not exempt. You were entitled to enjoy it before you received it, but not afterwards." At 322.

Florida courts have uniformly taken the position that Florida Statute 222.11 expresses a public policy of the state of Florida and must be liberally construed in order to effect the purpose of the statute which is to preserve to the unfortunate debtor and his family a means of living without becoming charges upon the public. *Maryl v. Hernandez*, 254 So. 2d 7 (Fla. 3d DCA 1971); *Elvine v. Public Finance Company*, 196 So. 2d 25 (Fla. 3d DCA 1967). Without question, these principles apply to the Rolle and Sjosten cases. In both instances the monies are in the hands of third parties. Ultimately, however, this is a matter of little importance. Our statute does not concern itself with the question, *"where* is the money?" Rather, it centers on the question, *"what* is the money?" As the court said in *Rutter v. Shumway*, supra —

> So long as the wages or earnings of the debtor are capable of identification he is entitled to have them exempt, according to the terms and conditions of the statute. At 322.

When the money is in the hands of an employer, there is at least an inference that it constitutes wages. But when the money is in the hands of a third party, be it a credit union, bank, or whatever, the burden is upon the debtor to come forward and establish that the funds are identifiable as wages. This procedure is consistent with the language of the statute and accords with common sense. An example is furnished in the case at bar where Ms. Sjosten possessed $40 in her bank account which she received from her husband as child support. This was not her own property; she held it as a trustee for her daughter. *Stewart v. Stewart*, 123 S.E. 2d 547 (Ga. Sup. Ct. 1962); *Hudson v. Hudson*, 290 A.2d 31 (Vt. Sup. Ct. 1972), 27B C.J.S. *Divorce* §321 (2). As such, she had not only the right but the duty to come forward and assert a claim of exemption.

Additionally, this procedure takes advantage of the flexibility that the legislature built into the statute. It allows for the change in times and practices that have occurred since 1875 when the statute was first enacted. At that time, Florida had a population around 200,000 and the people were engaged largely in farming and stock raising. Most of the wage earners were day laborers. *Wolf v. Commander*, supra. Today our population is over 8,485,230 and a substantial number of the work force, like Ms. Sjosten, are paid by the month. Consequently, checking accounts

and other modern banking services are necessities and their use is not precluded by the statute. The Supreme Court of Iowa in *Stanton v. Vernon,* supra, addressed the same question —

> It would be an unreasonable construction to hold that by the deposit of the earnings in the bank the debtor had voluntarily parted with the money and had acquired, in lieu thereof, a credit due to him from the bank, and, therefore, the exempt character of the money had been lost.

Eddie Lue Rolle sustained her burden of proving that the funds on deposit with the Tropical Telco Credit Union were directly traceable to exempt wages. She maintained the account as a depository and utilized the funds, as needed, to support herself and her child.

Cindy Sjosten also sustained her burden of proving that the deposits of October 29th ($35.10) and November 12th ($391.30) were derived from wages and services. As mentioned above, the deposits of November 11th ($20) and November 16th ($20) were contributions for child support which the mother received in her capacity as a trustee. They are not the property of Ms. Sjosten and consequently are not subject to garnishment. See citations set forth above.

The net value of Ms. Sjosten's personalty is $1,209.98. ($1,249.98 less $40 received as child support). Relying upon *Milam v. Davis,* 123 So. 668 (Fla. 1929), I conclude that the amount of exempt wage, ($426.40), is not to be considered in calculating the $1,000 exemption for personal property as allowed by Article 10, §4 (a) (2) of the Florida Constitution. Thus the defendant has $783.58 ($1,209.98 less $426.40 - wages) worth of personal property and under Florida Statute 222.07 Ms. Sjosten may designate the $38 deposit of November 19th as part of her personalty which falls within the $1,000.00 constitutional exemption.

Accordingly, in case number 75-701-CC-11, First Prudential Bank of West Palm Beach v. Eddie Lue Rolle and Tropical Telco Federal Credit Union, it is ordered and adjudged that the writ of garnishment entered herein is dissolved, and it is further ordered and adjudged that the plaintiff, First Prudential Bank of West Palm Beach, within fifteen days of the rendition of this order shall return to the defendant, Eddie Lue Rolle, the sum of $85.69.

With respect to case number 76-6468-SP, D. S. Wood and Associates, Inc. v. Cindy Sjosten and First National Bank of Palm Beach Gardens it is ordered and adjudged that the writ of garnishment entered herein is dissolved.