369 So.2d 987 (1979)
Eddie HOLMES and Versie Holmes, Petitioners,
v.
BLAZER FINANCIAL SERVICES, INC. and Royal Trust Bank of Palm Beach, N.A. f/k/a Worth Avenue Bank, Respondents.
No. 78-912.
District Court of Appeal of Florida, Fourth District.
April 4, 1979.
Rehearing Denied May 14, 1979.
*988 Malcolm Anderson of Law Offices of Malcolm Anderson, North Palm Beach, for petitioners.
John B. Powell, IV, of Ombres, Powell, Tennyson & St. John, West Palm Beach, for respondent Blazer.
Larry R. Morgan of Greater Orlando Area Legal Services, Inc., Orlando, as amicus curiae.
ANSTEAD, Judge.
By this petition for writ of certiorari the petitioners seek our interpretation of Section 222.11, Florida Statutes (1975) which exempts from garnishment wages due the head of a household.
The petitioners' bank accounts were garnished. In response, petitioners claim that the funds in the accounts were their wages and hence protected from garnishment under Section 222.11, which provides that
No writ of attachment or garnishment or other process shall issue from any of the courts of this state to attach or delay the payment of any money or other thing due to any person who is the head of a family residing in this state, when the money or other thing is due for the personal labor or services of such person.
The county court ruled that the bank account was exempt and in doing so acknowledged the existence of a case holding directly to the contrary: Hertz v. Fisher, 339 So.2d 1148 (Fla. 1st DCA 1976). The circuit court, in its appellate capacity, properly reversed the county court pursuant to State v. Hayes, 333 So.2d 51 (Fla. 4th DCA 1976) which stands for the proposition that a trial court in the Fourth Appellate District is bound by the decisions of other Florida District Courts of Appeal when there is no case on point from the Fourth District.
There are no Florida cases which have construed the statute in the manner advocated by petitioners. Rather, petitioners rely on a number of foreign decisions[1] and on certain language as to legislative intent contained in several Florida decisions.
In Wolf v. Commander, 137 Fla. 313, 188 So. 83 (1939) Justice Chapman writing for an evenly divided[2] Supreme Court noted:
[T]he purpose of the statute is to protect citizens against financial reverses and difficulties and to permit the citizen when residing in Florida and head of a family to be secure in money coming to him for his labor and services thereby supporting his family and preventing it from becoming a public charge. (Id. at 84)
In Wolf the Court rejected an argument that the statute be limited in application to "wages due laboring men." The Court noted:
It is suggested that an affirmance by this Court of the judgment appealed from will protect annual salaries of citizens of Florida ranging from $50,000 to $80,000. While this conclusion may be justified, the responsibility therefor does not rest on this Court but with the legislative department of our government. We are without power to enact law or to pass upon its wisdom or folly, but our duty is to construe or interpret it according to established rules and decisions. (Id. at 85)
Similarly, the conflict that is posed by petitioners is between the specific language of *989 the statute and the alleged underlying legislative intent in enacting the law. In this case we believe that the clear language must prevail over the petitioners' attempts to perceive the legislature's intent. We agree with the First District's construction in the Hertz case:
Although from his affidavit it appears that he is the head of a family residing in this state and that the money in his bank account is money which was paid to him for personal services, such money is no longer due to him for personal services because it has been paid by those for whom he performed the personal services. It is not now due for personal services but is payable to him by the bank to his credit in his bank account. (Id. at 1149)
It would appear that the legislature intended that there be no interference with the receipt by the head of a family of money due him for personal labor or services. Hence, the use of the phrase "to attach or delay" (emphasis supplied). However, the legislature made no provision to protect the money once it was received. We are bound to give effect to the clear words the legislature chose to use. Heredia v. Allstate Insurance Co., 358 So.2d 1353 (Fla. 1978). Our examination of those words reveals no ambiguity. The ambiguity, if any, is only present in the attempts to identify the legislature's specific purpose in enacting the law.
The foreign decisions relied upon by petitioners are exemplified by the case of Rutter v. Shumway,[3] where the Colorado Supreme Court held:
It is claimed by counsel for plaintiff in error that the proper construction of the act of 1885, above cited, is that the wages of the debtor are exempt from garnishment while they remain in the hands of the employer before payment, but not afterwards. The statute contains no such limitation or condition. The act declares: "There shall be exempt from levy under execution or attachment or garnishment the wages and earnings of any debtor to an amount not exceeding one hundred dollars, earned during the thirty days next preceding such levy," etc. It is not declared that such wages shall not be levied upon in the hands of the employer, or that they shall not be attached or garnished before payment. The language is unconditional and absolute that such wages "shall be exempt from levy under execution or attachment or garnishment;" and the courts cannot justly add words which would tend to defeat or restrict the manifest purpose of the statute. So long as the wages or earnings of the debtor are capable of identification he is entitled to have them exempt, according to the terms and provisions of the statute. (26 P. 321, 322)
Quite simply, the Florida and Colorado statutes are entirely different; and the difference is critical. Colorado protects a limited amount of wages, $100, earned within a thirty day period, regardless of whether the wages have been received or not. Section 222.11 protects an unlimited amount, as long as it is payable for personal labor or services, but only affords protection to amounts due to be paid.
The petitioners contend that the protection of the statute is meaningless unless it extends to wages received. We believe that argument is more appropriately directed to the legislature. It may be that the legislature, at the time this law was first enacted in 1875, felt wage earners were being adequately protected by the terms of the legislation since banking and credit were not as extensive as they are today. Then, many wage earners received their pay in cash, bought their necessities with cash, and paid their bills in cash. In many cases their wages were quickly expended so that attachment of cash in the hands of a wage earner was virtually impossible.
Today, with direct bank depositing of wages and our extensive credit system, many wage earners never see their earnings other than as paper transactions through a bank account. Hence, if it was the legislature's intent by Section 222.11 to completely *990 protect the wages of the head of the family from garnishment, the existing statute does not do the job. If the wages can be seized after they have been received and placed in a bank account then the head of a family subject to garnishment is certainly not secure "in money coming to him for his labor and services thereby supporting his family and preventing it from becoming a public charge." Wolf v. Commander, supra at 84. However, just as the legislature had the option of restricting the exemption to "wages due laboring men", so did it have the option to extend the exemption to wages once received. It is the prerogative of the legislature to extend or restrict such exemptions. This court cannot extend the effect of the statute beyond the unambiguous language chosen by the legislature. The petition for writ of certiorari is denied.
CROSS and MOORE, JJ., concur.
NOTES
[1] General Motors Acceptance Corp. v. Falcone, 130 N.J. Super. 517, 327 A.2d 699 (1974); Staton v. Vernon, 209 Iowa 1123, 229 N.W. 763 (1930); Rutter v. Shumway, 16 Colo. 95, 26 P. 321 (1891).
[2] Six justices participated in the decision and the trial court's decision was affirmed by the tie vote of the justices on the principle that it took a majority to reverse.
[3] Supra, note 1.