661 So.2d 896 (1995)
DON's SOD CO., INC., etc., Appellant,
v.
DEPARTMENT OF REVENUE, STATE OF FLORIDA, Appellee.
No. 94-804.
District Court of Appeal of Florida, Fifth District.
October 13, 1995.
*897 John P. Grier, Melbourne Beach, and James O. Driscoll, Orlando, for Appellant.
Robert A. Butterworth, Attorney General, Olivia P. Klein and C. Lynne Overton, Assistant Attorneys General, Tallahassee, for Appellee.
W. SHARP, Judge.
Don's Sod Company, Inc. appeals from the dismissal of its complaint with prejudice. Don's suit sought to contest sales and use tax assessments ($154,475 for the period of May 1985 through April 1988, and $7,932.76 for the period May 1988 through August 1988). In addition to challenging the constitutionality and propriety of the assessments, Don's complaint also asked the circuit court to find section 72.011(3) unconstitutional. The trial court ruled it was without subject matter jurisdiction to dispose of any issues raised. We reverse and remand for further proceedings.
The circuit court concluded it had no subject matter jurisdiction because of the provisions in section 72.011(3). That statute provides:
In any action filed in circuit court contesting the legality of any tax, interest or penalty assessed under a section or chapter specified in subsection (1), the plaintiff must:
(a) pay to the applicable department the amount of the tax, penalty, and accrued interest assessed by such department which is not being contested by the tax-payer; and either

*898 (b) 1. tender into the registry of the court with the complaint the amount of the contested assessment complained of, including penalties and accrued interest, unless this requirement is waived in writing by the executive director of the applicable department; or
2. file with the complaint a cash bond or a surety bond for the amount of the contested assessment endorsed by a surety company authorized to do business in this state, or by any other security arrangement as may be approved by the court, and conditioned upon payment in full of the judgment, including the taxes, costs, penalties, and interest, unless this requirement is waived in writing by the executive director of the applicable department.
Failure to pay the uncontested amount as required in paragraph (a) shall result in the dismissal of the action and imposition of an additional penalty in the amount of 25 (twenty-five) percent of the tax assessed.
* * * * * *
(5) The requirements of this section are jurisdictional.
Don's made no attempt to satisfy any of the requirements of section 72.011(3). It did not seek a waiver from the Department. It did not pay the contested assessments into the registry of the court. Nor did it file a cash bond or a surety bond with its complaint. Further, it has not filed a motion to have the court make any other security arrangements. The Department takes the position that these requirements have to be met the instant the complaint is filed or the circuit court is deprived of subject matter jurisdiction. Since they were not met in this case, the circuit court had no alternative but to dismiss with prejudice.
We disagree. At least the circuit court had jurisdiction to rule on the constitutionality of the statute. See § 86.011, Fla. Stat. (1993). In Psychiatric Associates v. Siegel, 610 So.2d 419 (Fla. 1992), a suit was filed without a bond, which was required by the applicable statute. The district court of appeal[1] ruled that the statute was unconstitutional because it precluded access to the courts.[2] The supreme court affirmed on that ground, as well as others.
No bond requirement or other like financial hurdle can be employed by the Legislature to prevent a constitutional challenge to those very provisions that bar access to the court. Such a ruling could make a mockery of Article I, section 21, Florida Constitution. The Department relies on Mirabal v. Department of Revenue, 553 So.2d 1297 (Fla. 3d DCA 1989), which involved the same statute as this case, and which approved dismissal of a complaint for lack of subject matter jurisdiction. However, in that case, the constitutionality of section 72.011 was apparently not raised, and it clearly was not discussed.
The Department also suggests that the circuit court did not need to consider the constitutionality of the statute because it would be bound by our sister court's decision in Department of Revenue v. Nu-Life Health and Fitness Center, 623 So.2d 747 (Fla. 1st DCA 1992), which upheld section 72.011 against a similar constitutional challenge. Since this district has not issued an opinion concerning the constitutionality of section 72.011, we agree that the circuit court was bound to follow Nu-Life.[3] However, we are *899 not. We take a somewhat different view of that statute.
Our starting point is North Port Bank v. Department of Revenue, 313 So.2d 683 (Fla. 1975). In that case, the bank sought to challenge a tax assessment for claimed unpaid documentary stamps and intangible taxes. Under the applicable statute, section 199.242(3), the contested tax had to be paid to the Department prior to filing suit, or paid into the court, or a cash or surety bond for the full contested amount had to be filed with the lawsuit seeking to challenge the assessment. The bank admitted it had done none of the above, but it alleged (as in this case) that such provisions were unconstitutional because they deprive persons of access to the courts,[4] and they violated the bank's constitutional rights to due process and equal protection.
The court did not dismiss that case for lack of jurisdiction, as the Department urges the trial court correctly did in this case. Rather, the supreme court proceeded to do some heavy-handed construction of section 199.242 to save it from constitutional infirmity. The court said that if construed literally, the statute would be unconstitutional on all three grounds urged by the bank. It pointed out that the power to tax is the power to destroy, and that those who assess and collect taxes, like other human beings, make mistakes. Access to the courts to challenge tax assessments must be provided in a meaningful sense to the taxpayer, because "the only non-violent defense is legal action against the government." 313 So.2d at 687.
The court stated that a provision in section 199.242(3) which allowed the court to approve other sureties not authorized to do business in this state if a party filed such a surety bond, meant that a party could petition the court to fix the amount to either deposit in court or to post as bond, pending the outcome of the case. The court said, that if after filing the case challenging the taxes, a party had not complied with the bond-surety provisions.
the court should hold a preliminary hearing to set such amounts and condition of the bond or funds to be deposited in the Court registry... . Such assessments are considered prima facie correct and unless this presumption is overcome by the taxpayer to require reduction, the amounts claimed should be set by the Court as proper. If the taxpayer does not comply with the conditions set by the Court, the suit should be dismissed.
North Port, at 687.
Thus the court held in North Port that such a statute must allow a taxpayer a means through the court for relief from the bond/payment requirements of the statute. Implicit in the ruling is the possibility that the court could, in an appropriate case, set an amount less than the assessed tax. It is also clear that setting the bond or deposit amount was something the taxpayer could petition the court for, after filing suit, or something the court should pursue and set if the taxpayer did not do so, prior to dismissing the lawsuit.
In Psychiatric Associates, the court held unconstitutional a statute which required the posting of a cost bond, but which had no alternative remedy for persons filing a specific kind of lawsuit. It said that the effect of requiring the posting of a bond to cover the defendant's costs and attorney's fees violated the plaintiff's right of access to the courts.[5] The effect of the bond requirement was to discourage suits by the poor, but not the rich. The more complex the case, the higher the bond would be. The court concluded such a provision was not reasonably related to the purpose of the statute. The defect in that statutory scheme was failure to provide a way to address the merits of the claim before having to post a bond, and failure to allow the court to consider the plaintiff's ability to post a bond, and waive it, or reduce it, if a *900 plaintiff were too impoverished to pay or bond the full amount.
The First District Court of Appeal in Nu-Life thought that the Legislature had followed the supreme court's blueprint for constitutionality, stated in North Port, in drafting section 72.011(3). It pointed to two alternative remedies open to challenging a tax assessment: the power of the Department to waive the bond or payment requirements as provided in section 72.011(3); and an administrative proceeding pursuant to Chapter 120, which has no bond or payment requirements. Although an administrative proceeding reviewable in the district court of appeal may in some cases satisfy the constitutional requirement of access to the courts,[6] it is not a satisfactory remedy where, as here, the taxpayer is challenging the constitutionality of the assessments as well as the bond or tax payment provisions prior to obtaining access to the courts.[7] Administrative hearing officers lack jurisdiction to consider constitutional questions.[8]
The waiver provisions relied upon by the Nu-Life court also do not fully satisfy the guidelines set forth in North Port and Psychiatric Associates. Initially, it is clear that the supreme court mandated the fashioning of an alternative to, or waiver of, the bond/payment provisions be done by a court, addressed to a court's equitable powers and discretion. Substituting an executive of the Department is not the same thing. If such a delegation were exclusive to the Department only, it would constitute a transfer of powers from the judicial to the executive branch of government in violation of Article II, section 3 of the Florida Constitution.
Further, the guidelines under which the executive director of the Department exercises waiver powers, as described in Nu-Life, are not sufficiently defined to escape an improper delegation of powers argument, in our view.[9] The first ground focuses on making sure the Department can ultimately collect its assessed taxes. Waiver is authorized if the "financial resources of the taxpayer are sufficient to ensure that any final judgment upholding an assessment of tax, penalty, and interest will be satisfied." 623 So.2d at 751. This would benefit only wealthy taxpayers.
Waiver is also allowed if payment into the court or the bonding requirement would be "manifestly unjust" because of the circumstances of the assessment or of the taxpayer. This waiver power may be intended to address the problem of affording an impoverished taxpayer access to the courts. If it is, it is so broad and general, there is no difference between what the executive director is doing and what a circuit court would be doing pursuant to North Bank. Further, these guidelines have no statutory basis, which poses still another constitutional delegation of powers problem.[10]
In order to salvage section 72.011 from constitutional challenge, pursuant to North Bank and Psychiatric Associates, it is necessary to read into subsection (b)2, "by any other security arrangement as may be approved by the court," the right of the taxpayer to move the court to allow it to post a *901 lesser bond amount or no bond, or make alternative security arrangements. Strict enforcement of the statute means an impoverished taxpayer will be deprived of access to the court to challenge the tax assessment. The statute expressly provides the director can waive this requirement. But it does not expressly deprive the court of this discretionary power.
This is a close question,[11] but we err on the side of endeavoring to uphold the constitutionality of a statute where possible.[12] Thus we construe section 72.011(3) as allowing a taxpayer filing a suit in the circuit court to challenge a tax assessment, the right to petition the court to hold a hearing in order to allow the taxpayer to make other security arrangements in lieu of paying the full assessed contested taxes or posting a bond for the full amount.[13] This necessarily includes the possibility that the court could set a bond sum less than the full assessed taxes, or none at all, if such requirements would deny an impoverished taxpayer access to the court to challenge a tax assessment. These matters are directed to the equitable powers and discretion of the court, and must be determined on a case-by-case basis.
Further, the taxpayer need not have petitioned for this alternative relief prior to filing suit or simultaneously with filing suit, as argued by the Department. The statute only provides for dismissal of the taxpayer's complaint, if the taxpayer fails to pay the uncontested amount of taxes. § 72.011(3)(b)2. In this case there are no uncontested taxes. Prior to any hearing on the merits, however, such alternative security arrangements must be sought, for the contested tax amount, and if the court's orders in this regard are not complied with by the taxpayer, then the suit should be dismissed. Section 72.011(5) provides that the bond/payment/alternative arrangements are "jurisdictional." But, the plaintiff taxpayer must be afforded a realistic opportunity to make alternative security arrangements after filing suit, before facing dismissal of the cause of action.
Accordingly, we reverse and remand this cause for further proceedings consistent with this opinion. We acknowledge a conflict with Nu-Life and Mirabal.[14]
REVERSED and REMANDED.
THOMPSON, J., and PADOVANO, P.J., Associate Judge, concur.
NOTES
[1] Psychiatric Associates affirmed the case of Sittig v. Tallahassee Memorial Regional Medical Center, Inc., 567 So.2d 486 (Fla. 1st DCA 1990).
[2] Art. I, § 21, Fla. Const., provides:

Access to courts.  The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay.
[3] Conquest v. Auto-Owners, Inc. Co., 637 So.2d 40, 42 (Fla. 2d DCA 1994), approved, 658 So.2d 928 (Fla. 1995); State v. Bamber, 592 So.2d 1129, 1131 (Fla. 2d DCA 1991), approved, 630 So.2d 1048 (Fla. 1994); Pimm v. Pimm, 568 So.2d 1299 (Fla. 2d DCA 1990), approved, 601 So.2d 534 (Fla. 1992); Dealers Ins. Co., Inc. v. Jon Hall Chevrolet Co., Inc., 547 So.2d 325, 326 n. 1 (Fla. 5th DCA 1989); In re E.B.L., 544 So.2d 333, 336 (Fla. 2d DCA 1989); Clara P. Diamond, Inc. v. Tam-Bay Realty, Inc., 462 So.2d 1168, 1169 (Fla. 2d DCA 1984); Industrial Fire and Casualty v. Acquesta, 448 So.2d 1122, 1123 (Fla. 4th DCA 1984), approved, 467 So.2d 284 (Fla. 1985); Chapman v. Pinellas County, 423 So.2d 578 (Fla. 2d DCA 1982); Holmes v. Blazer Financial Services, Inc., 369 So.2d 987, 988 (Fla. 4th DCA 1979); State v. Hayes, 333 So.2d 51 (Fla. 4th DCA 1976). See also, Stanfill v. State, 384 So.2d 141 (Fla. 1980) (Florida District Court of Appeal decisions represent Florida law unless overruled by Florida Supreme Court).
[4] Art. I. § 21, Fla. Const.
[5] Art I, § 21, Fla. Const.
[6] See Department of Agriculture and Consumer Services v. Bonanno, 568 So.2d 24 (Fla. 1990); Scholastic Systems, Inc. v. LeLoup, 307 So.2d 166 (Fla. 1974); Hill Top Developers v. Holiday Pines Service Corp., 478 So.2d 368 (Fla. 2d DCA 1985), rev. denied, 488 So.2d 68 (Fla. 1986).
[7] See York Bus Tours, Inc. v. City of New York, 443 N.Y.S.2d 309, 111 Misc.2d 10 (N.Y.Sup. 1981); Richfield Oil Corp. of New York v. City of Syracuse, 287 N.Y. 234, 39 N.E.2d 219 (N.Y. 1942); First National City Bank v. City of New York Finance Administration, 36 N.Y.2d 87, 365 N.Y.S.2d 493, 324 N.E.2d 861 (N.Y. 1975).
[8] Gulf Pines Memorial Park, Inc. v. Oaklawn Memorial Park, Inc., 361 So.2d 695 (Fla. 1978); Dept. of Revenue v. Young American Builders, 330 So.2d 864 (Fla. 1st DCA 1976).
[9] North Bay Village v. Blackwell, 88 So.2d 524 (Fla. 1956); City of Miami v. Save Brickell Ave., Inc., 426 So.2d 1100 (Fla. 3d DCA 1983); Lewis v. Florida State Board of Health, 143 So.2d 867 (Fla. 1st DCA 1962), cert. denied, 149 So.2d 41 (Fla. 1963).
[10] See Florida Bridge Co. v. Bevis, 363 So.2d 799 (Fla. 1978); City of Cape Coral v. GAC Utilities, Inc. of Florida, 281 So.2d 493 (Fla. 1973); Edgerton v. International Co., 89 So.2d 488 (Fla. 1956); Gulfstream Park Racing Ass'n. v. Department of Business Regulation, Div. of Pari-Mutuel Wagering, 443 So.2d 113 (Fla. 3d DCA), approved, 441 So.2d 627 (Fla. 1983).
[11] Contra, Mirabal v. Department of Revenue, 553 So.2d 1297 (Fla. 3d DCA 1989).
[12] See Gulfstream Park Racing Ass'n. v. Department of Business Regulation, 441 So.2d 627 (Fla. 1983); Gaulden v. Kirk, 47 So.2d 567 (Fla. 1950); Grova v. Baran, 134 So.2d 25, 26 (Fla. 2d DCA 1961).
[13] If we did not so construe this statute, we would be compelled to find it violates Article I, section 22 of the Florida Constitution, and is therefore unconstitutional.
[14] Fla.R.App.P. 9.030(a)(2)(vi).